IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF NEW YORK, et al,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Civil Docket No. 20-cv-2340 (EGS) |

**DEFENDANTS' MOTION FOR CLARIFICATION**

On September 27, 2020, this Court entered a preliminary injunction enjoining Defendants "from enforcing the Postal Policy Changes." Order (Sept. 27, 2020), ECF No. 51. The Court's memorandum opinion defined those changes as: (1) "removing 671 high-speed sorting machines nationwide," (2) "prohibiting 'late trips' and 'extra trips,'" (3) an 'initiative' that prohibited mail carriers in certain cities from spending time in the morning sorting mail so they could 'leave for the street earlier,'" and (4) informing "46 states and the District of Columbia that if the states did not pay First Class postage on ballots sent to the voters, there would be a risk that voters would not receive their ballots in time to return them by mail," which was "a change to the USPS policy of treating election mail and political mail marked as marketing mail on an expedited First-Class basis." Mem. Op., at 5-8, ECF No. 52.

In response to other court orders, USPS has issued instructions that also serve to comply with this Court's recent order. As relevant here, those instructions make clear that the Postal Service (1) has "suspend[ed] all removal of letter and flat sorting machines until after the

1

November 2020 elections," (2) "has not banned the use of late and extra trips," and (3) will "prioritize Election Mail that is entered as Marketing Mail regardless of the paid class." Clarifying Operating Instructions, at 3-4, ECF No. 50-1. The Postal Service has also allocated additional resources toward the expeditious processing of Election Mail starting October 1, so that "Election Mail entered as Marketing Mail . . . is generally delivered in line with First-Class Mail delivery standards." Additional Resources for Election Mail Beginning October 1, at 1 ECF No. 50-3.

Still, to ensure that the Postal Service is in full compliance with the intent of this Court in issuing the Order, Defendants seek to clarify three aspects: (1) that the injunction prospectively prohibits the Postal Service from removing mail processing requirement, but does not require it to bring mail processing equipment back into service if that equipment has already been dismantled or dissembled for their usable parts (which would likely be impossible); (2) that Election Mail sent as Marketing Mail need not, for the first time, be sent via plane (which would constitute a major change that would seriously disrupt the processing of the mail and may not, in fact, be possible), and (3) that the Postal Service is not required to treat Political Mail in the same manner as Election Mail (a remedy that Plaintiffs have not sought). Defendants seek these clarifications to guard against the likely unintended consequences of a ruling that would undermine the Postal Service's ability to timely deliver the mail before the upcoming election— a result that Defendants believe this Court did not intend. Pursuant to LCvR 7(m), Counsel for the Defendants have conferred with Counsel for the Plaintiffs who represent that they do not object to Defendants seeking clarification of the Court's preliminary injunction order, but will respond in writing with their position on each of the motion's points on the deadline set by the local rules (or as otherwise ordered by the Court).

## STANDARD OF REVIEW

A preliminary injunction order must "state its terms specifically," and "describe in detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). To ensure compliance with Rule 65(d)(1), a district court may clarify the scope of an injunction. *Paramount Pictures Corp. v. Carol Publ'g Group, Inc.*, 25 F. Supp. 2d 372, 374 (S.D.N.Y. 1998) (citing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945)). By clarifying the scope of a previously issued preliminary injunction, a court "add[s] certainty to an implicated party's effort to comply with the order and provide[s] fair warning as to what future conduct may be found contemptuous." *See N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984); *see also Robinson v. Delicious Vinyl Records Inc.*, No. CV134111CASPLAX, 2013 WL 12119735, at *1 (C.D. Cal. Sept. 24, 2013).

To the extent this Court views this motion as seeking reconsideration, Defendants respectfully ask that this Court grant such relief. Under Federal Rule of Civil Procedure 54(b), "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). A Rule 54(b) motion may be granted "as justice requires." *Coulibaly v. Tillerson*, 278 F. Supp. 3d 294, 201 (D.D.C. 2017); *United States v. Dynamic Visions, Inc.*, 321 F.R.D. 14, 17 (D.D.C. 2017); *Singh v. George Washington Univ.*, 338 F. Supp. 2d 99, 1010 (D.D.C. 2005) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)). The moving party bears the burden of establishing "that some harm, legal or at least tangible, would flow from a denial of reconsideration." *Dynamic Visions, Inc.*, 321 F.R.D. at 17 (quoting *Cobell*, 355 F. Supp. 2d at 540) (internal quotation marks omitted).

## ANALYSIS

The Postal Service has strived to ensure compliance with the Court's order. Nonetheless, Defendants have identified a limited set of circumstances where, if construed as potentially required by the Court's order, compliance would either be impossible, or may result in material delays in the mail. Therefore, Defendants make the following requests for clarification to ensure that their interpretation is consistent with the Court's intent.

*First*, the Court enjoined Defendants "from enforcing the Postal Policy Change[]," Order, at 1, ECF No. 51, of "removing 671 high-speed sorting machines nationwide," Mem. Op. at 5. Defendants respectfully request that this Court clarify that its Order prospectively enjoins the Postal Service from removing mail sorting machines from service, but that it does not require the Postal Service to return disassembled machines into service (something that may not be possible).

"[T]he Postal Service has suspended all removal of letter and flat sorting machines until after the November 2020 elections." Clarifying Operational Instructions, at 3, ECF No. 50-1. The Postal Service further provided that "if it is determined to add processing capacity to fulfill [the Postal Service's] service commitments with regard to Election Mail, available processing equipment will be returned to service." *Id.* at 4. This is a requirement of the preliminary injunction entered both by the Court in the Eastern District of Washington and by the Court in the Eastern District of Pennsylvania. *See* Order, at ¶ 3, *State of Washington v. Trump*, No. 20-cv-3127-SAB (E.D. Wash. Sept. 17, 2020), ECF No. 81; Order, at ¶ 3, *Commonwealth of Pennsylvania v. DeJoy*, No. 20-cv-4096 (E.D. Pa. Sept. 28, 2020), ECF No. 63. However, "[b]ecause removed machines are generally [disassembled] for their usable parts, with such parts being removed to maintain or enhance other machines, there is no current plan to return removed machines to service." Clarifying Operational Instructions, at 3, ECF No. 50-1; *see also* Couch Dec. ¶ 11, ECF No. 30-2

4

("When machines are removed from a facility, they are dissembled for their usable parts. Some of the older machines have parts that are now impossible to replace. We take those parts to maintain the other machines.[1] Parts that are not usable are sold."); Couch Dec. ¶ 12 ("It would be impossible to undo the decommissioning and removal of some machines, as some machines' critical parts are now in use elsewhere and other machines (once all proprietary components are removed) have been offered for sale to the general public through the Postal Service's Corporate Asset Accountability Office."). The Postal Service clarifies, however, that it has "more than sufficient capacity to process current and anticipated mail volumes with the existing machine fleet," and therefore does not expect the availability of machines to be an issue. Clarifying Operational Instructions, at 3, ECF No. 50-1.

Defendants therefore respectfully seek that this Court clarify that the provision of its order enjoining the Postal Service from enforcing the policy of removing mail processing equipment does not require it to return such removed equipment to service, particularly if such equipment has already been disassembled or sold.

*Second*, notwithstanding this Court's direction that the Postal Service be enjoined from implementing the Postal Policy Changes, *see* Order, ECF No. 51, there is a construction of the Order that would require the Postal Service, for the first time, to change its policies to transport Election Mail entered as Marketing Mail by air. Defendants seek clarification that the Court does not require this result, which is not possible for technical reasons without seriously disrupting the Postal Service's operations.

---

[1] "Some machines can also be expanded using parts from others. For example, in a facility where a Delivery Barcode Sorter was decommissioned, many of its sorting stacker units were attached to another sorter in order to increase the second sorter's capabilities, which is a more efficient use of space and personnel than having two separate machines, each with less capacity." Couch Dec. ¶ 11.

As an initial note, Defendants understand the Court's reference to "the USPS policy of treating election mail . . . mailed as marketing mail on an expedited First-Class basis," Mem. Op. at 8, ECF No. 52 (citing Pls.' Ex. 30, ECF No. 12-33 at 12) to refer to the policies and practices the Postal Service has in place to ensure that "Election Mail entered as Marketing Mail should be . . . processed expeditiously to the extent feasible so that it is generally delivered in line with the First-Class Mail delivery standards." *See* Clarifying Operational Instructions, at 4, ECF No. 50-1; *see also* Additional Resources for Election Mail Beginning October 1, at 1, ECF No. 50-3. Defendants base this understanding on the Court's citation of the USPS OIG report in the Court's opinion, where the report states that "[t]he Postal Service *often* prioritizes Election . . . Mail mailed as Marketing Mail and treats it as First-Class Mail." Pls.' Ex. 30, ECF No. 12-33, at 12 (emphasis added). That OIG report that the Court cites for the pre-change baseline goes on to describe additional examples of how "the Postal Service has altered its normal processes to accommodate the timely processing of Election . . . Mail and help meet the needs of elections." *Id.* The Postal Service is continuing—and, indeed, expanding—these practices with respect to the November Election. *See, e.g.*, Clarifying Operational Instructions, at 4, ECF No. 50-1; *see also* Additional Resources for Election Mail Beginning October 1, at 1, ECF No. 50-3. Accordingly, the Postal Service believes its current practices as described in the recent Operating Instructions and Additional Resources guidance comport with this Court's injunction, and respectfully request that the Court clarify if this is not so.

In any event, the Postal Service respectfully requests that this Court clarify that its Order enjoining certain operational changes does not require it, for the first time, to transport Election Mail sent as Marketing Mail by air. This is because "[i]n limited circumstances, specifically when mail is to be transported across the county, it is not operationally possible for Election Mail entered

as Marketing Mail to be delivered as quickly as First-Class Mail . . . due to certain inherent differences between the products and the inability of mail processing machines to distinguish between Election Mail entered as Marketing Mail and other Marketing Mail." Supp. Glass Dec. ¶ 5. As "has been historically true and has not changed," "a portion of First-Class Mail travels by air transportation," while "Marketing Mail is transported strictly on a surface network," *id.*, and therefore "Election Mail sent via Marketing Mail is not transported by air." *Id.* ¶ 6. "This is no different than in past elections and does not reflect any change in the Postal Service's policies or practices this year." *Id.*

There are technical reasons that prevent the Postal Service from being able to modify this policy, at least at the scale potentially required by the Court's order. Based on their programing, "[w]hen Postal Service scanning machines sort mail, mail labeled as Marketing Mail is sorted for ground transportation." *Id.* ¶ 7. Because the scanning machines "cannot distinguish between different kinds of Marketing Mail," "there is no way to instruct the machines to [specifically] sort Election Mail that is sent as Marketing Mail for air transportation." *Id.*

The Postal Service has considered several workarounds, but none are feasible, at least in the short time between now and the Election. First, it could send *all* Marketing Mail for air transportation, but this "is likely to have a negative impact on the air transportation network," *id.*, which has already suffered a "substantial reduction" due to COVID-19, *id* ¶ 9. Second, it could instruct employees to manually re-label all the trays of Marketing Mail that it identifies as containing Election Mail. *Id.* ¶ 8. Large-scale relabeling is not practicable for at least four reasons. First, manual re-labeling would consume significant employee time, diverting employees from other critical mail-sortation tasks (and thus delay that mail). *Id.*; *see also id.* ("[t]here is no way to do a mass relabeling or reprinting without manually replacing each label with a manually printed

7

label."). Second, manual re-labeling would also require that the mail be held for the labor-intensive process, which would delay all mail, including Election Mail. Because the Postal Service relies on machines to process mail, it is not staffed at levels to sort all Election Mail entered as Marketing Mail by hand. *Id.* Third, large-scale relabeling could also tax or exceed the Postal Service's air capacity. "Due to COVID-19, there has been a substantial reduction in commercial flights and flights by other air transportation contractors, which the Postal Service uses to move mail, which limits the Postal Service's capacity to move mail by air." *Id.* ¶ 9. Finally, manual re-labeling would override the initial tray-level and would remove the ability of election officials to track ballots. *Id.* ¶ 10. While the Postal Service may be able to implement long-term solutions to distinguish Election Mail sent as Marketing Mail from other Marketing Mail, it is not possible to implement those solutions this close to an election, especially as states have begun printing and mailing ballots. *Id.* ¶ 11.

The Postal Service therefore respectfully requests clarification that—consistent with its long-standing practice—Election Mail sent as Marketing Mail need not be sent by air if such practices are not operationally possible. Specifically, the Postal Service requests that the Court amend its Order to clarify that "The Postal Service is not required to ship Election Mail sent as Marketing Mail by air." Implementing this change would also be consistent with two recent Federal District Court orders, both of which made clear that while the Postal Service must ensure that Election Mail "is generally delivered in line with First-Class Mail delivery standards," it is not required to move Marketing Mail by air. *See, e.g.*, Order (Oct. 2, 2020), *State of Washington v. Trump*, No. 20-cv-3127-SAB (E.D. Wash.), ECF No. 90; Order (Sept. 25, 2020), *Jones v. USPS*, No. 29-cv-6516 (VM), ECF No. 57.

8

To be clear, this practical barrier would only affect Election Mail entered as Marketing Mail that is traveling long distances. "Because First-Class Mail sent within shorter distances does not generally travel by air, the practical barrier identified above should not prevent Election Mail sent within shorter distances from receiving a delivery speed equal to First-Class Mail even when it is entered as Marketing Mail." *Id.* ¶ 12. Moreover, the Postal Service will employ special individualized measures to deliver individual ballots mailed close to elections, which may include manually separating them and moving them by air. And, as discussed above, the Postal Service has, and will continue to have numerous policies in place to prioritize Election Mail so that "it is generally delivered in line with the First-Class Mail delivery standards." Clarifying Operational Instructions, ECF No. 50-1, at 4. Indeed, the Postal Service is "expanding processing windows on letter and flat sorting equipment to ensure that all Election Mail received prior to the First-Class Mail Critical Entry Time[2] is processed that same day," *id.*, while further instructing that, effective October 1, "to the extent possible, Election Mail received after the Critical Entry Time should be processed and advanced as if it arrived prior to the Critical Entry Time, unless doing so would disrupt on-time service for Election Mail received prior to the Critical Entry Time." Additional Resources for Election Mail Beginning October 1, ECF No. 50-3, at 1.[3]

*Finally*, Defendants respectfully request that this Court clarify that the Postal Service is not required to treat Political Mail in the same manner as Election Mail, i.e., "mailed as marketing

---

[2] "By ensuring that Election Mail entered as Marketing Mail is processed with the same Critical Entry Time as First-Class Mail, the Postal Service can ensure that Election Mail entered as Marketing Mail at its final destinating facility [i.e., the center that last processes the mail before it is sent to delivery units] is transported to delivery units and delivered locally by letter carriers with the same speed as First-Class Mail." Supp. Glass Dec. ¶ 4.

[3] There are other distinctions between First-Class Mail and Marketing Mail that are not related to delivery speed, including the fact that First-Class Mail is sealed from inspection. *See* Supp. Glass Dec. ¶¶ 13-15. Defendants do not understand this Court's injunction to reach these features.

mail on an expedited First-Class basis." Mem. Op. at 8, ECF No. 52. "The Postal Service defines 'Election Mail' as any item mailed to or from authorized election officials that enables citizens to participate in the voting process. This includes ballots, voter registration forms, ballot applications, polling place notifications, and similar materials. . . . This is distinct from 'political mail,' which is sent by political candidates, political action committees, and similar organizations in order to engage in issue advocacy or to advocate for candidates or other things, such as initiatives, that may appear on a ballot." Glass Dec. ¶ 3, ECF No. 30-2; *see also See* Order, *Jones v. USPS*, No. 20-cv-6516-VM, ECF No. 49, at 17 n.8 (S.D.N.Y. Sept. 21, 2020) (adopting same definition of Election Mail).

Other than through an incidental reference, Plaintiffs have not challenged, or even mentioned, the Postal Service's policies with respect to the treatment of Political Mail. *See, e.g.*, Compl. ¶ 79, ECF No. 1, (complaining about the Postal Service having "[a]ltered election mail standards," and noting that "the agency's inspector general found that 95.6 percent of election and political mail was delivered within First Class mail speed standards."); PI Mem. at 11, ECF No. 12-1 (stating that "[T]he U.S. Postal Service also disavowed its prior practice of delivering election mail at First Class speeds of one to three days regardless of the paid class of service," and citing to an exhibit that stated that "[t]he Postal Service often prioritizes Election and Political Mail mailed as Marketing Mail and treats it as First-Class Mail."). Nor have the Plaintiffs attempted to demonstrate their standing with respect to Political Mail, as they do not allege that they have been injured by the timing of mail sent by politicians or political actors with regards to an upcoming election.

Defendants also understand this Court to have focused on the issue of Election Mail, rather than Political Mail, in issuing its memorandum opinion. In that opinion, this Court refers to the

relevant Postal Policy Change (the change that it ultimately enjoined) as relating to the treatment of "ballot sent to voters." *See* Mem. Op., at 8, ECF No. 52. The Postal Service recognizes such ballots as Election Mail, rather than Political Mail, and they will be treated on an expedited basis. *See* Additional Resources for Election Mail, ECF No. 51-3. Moreover, that letter did not discuss Political Mail at all.

If this Court intends its order to cover all Political Mail, rather than Election Mail, then significant operational consequences could occur as a result. The vast majority of identifiable Political Mail—approximately 97.6% in April through June 2020—is currently sent as Marketing Mail. *See* U.S. Postal Service, Office of the Inspector General, Audit Report: Processing Readiness of Election and Political Mail During the 2020 General Elections, Rpt. No. 20-225-R20 (Aug. 31, 2020), at 13, attached as Pls.' Ex. 20, ECF No. 12-33. Moreover, to the extent such Marketing Mail would need to be sent by air in order to meet First-Class Mail delivery standards, it is likely that the Postal Service would face the same operational consequences as discussed above with regards to Election Mail.

Thus, Defendants respectfully request that this Court clarify that the reference to enjoining the "Postal Policy Changes" does not require the Postal Service to treat all Political Mail as First-Class Mail.

## CONCLUSION

For the aforementioned reasons, Defendants respectfully request that this Court grant Defendants' Motion for Clarification of the Preliminary Injunction Order.

Dated:  October 5, 2020	Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ERIC R. WOMACK

Assistant Director, Federal Programs Branch

*/s/ Joseph E. Borson*
JOSEPH E. BORSON (Va. Bar No. 85519)
KUNTAL CHOLERA
ALEXIS ECHOLS
DENA M. ROTH
JOHN J. ROBINSON
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
(202) 514-1944
Joseph.Borson@usdoj.gov

*Attorneys for Defendants*