UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATE OF NEW YORK, et al.,

            Plaintiffs,

  v.

DONALD J. TRUMP, *in his official capacity as President of the United States*, et al.,

            Defendants.

Case No. 20 Civ. 2340 (EGS)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR CLARIFICATION**

On September 27, 2020, the Court preliminarily enjoined Defendants from enforcing four postal policy changes that the United States Postal Service announced and implemented in June and July 2020: (1) the removal of high-speed sorting machines nationwide; (2) the operational pivot that included curtailing late trips and extra trips; (3) the "Expedited to Street / Afternoon Sortation" initiative; and (4) the decision not to treat all election mail mailed as marketing mail on an expedited First-Class basis. *See New York v. Trump*, No. 20-cv-2340 (EGS), 2020 WL 5763775, at *2-3 (D.D.C. Sept. 27, 2020); *see also* Order Granting Plaintiffs' Motion for Preliminary Injunction (ECF No. 51).

On October 5, Defendants filed a motion for clarification (or, in the alternative, reconsideration) regarding three aspects of the Court's Order. As described below, Plaintiffs oppose Defendants' motion with regard to sorting machines and election mail delivery standards, and do not oppose Defendants' motion with regard to political mail.

1

## STANDARD OF REVIEW

A "'motion for clarification' is not a formal creature of civil procedure; it appears nowhere in the Federal Rules.  Nevertheless, federal courts permit parties to tender motions that beseech the court 'to explain or clarify something ambiguous or vague' about a ruling, but not to 'alter or amend' it." *All. of Artists & Recording Cos. v. General Motors Co.*, 306 F. Supp. 3d 413, 418 (D.D.C. 2016) (quoting *United States v. Phillip Morris USA, Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011)).  A party meets the "threshold requirements for seeking clarification" where a Court's order "is reasonably susceptible to differing interpretations." *Id.* at 419.  A court considering a motion for clarification will not "entertain new factual and legal issues beyond the scope of" the court's original order.  Minute Order, *N. Air Cargo. v. U.S. Postal Serv.*, No. 09-cv-2065 (EGS) (D.D.C. Dec. 2, 2010).

Defendants invite the Court in the alternative to construe their motion as one for reconsideration under Fed. R. Civ. P. 54(b).  *See* Defs.' Mem. 3 (ECF No. 54).  Reconsideration is available "as justice requires," which ordinarily requires the moving party to show that "the court has patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or a controlling or significant change in the law has occurred." *All. of Artists & Recording Cos.*, 306 F. Supp. 3d at 415-16 (quoting *Pierce v. Dist. of Columbia*, 146 F. Supp. 3d 197, 198 (D.D.C. 2015)).

## ARGUMENT

The motion for clarification or reconsideration should be denied as to Defendants' sorting machine and election mail requests.  Defendants have not identified anything vague or ambiguous about the Court's Order that warrants clarification, and have not identified any error or misunderstanding by the Court that merits reconsideration.  Although purporting to seek only clarification, Defendants' motion instead asks the Court to relieve them of obligations under the

injunction, which would lead to predictable delays in election mail during the critical period before and immediately after the 2020 general election.

*1.* Defendants ask the Court to clarify that the Court's preliminary injunction prohibiting the removal of high-speed sorting machines "does not require the Postal Service to return disassembled machines into service." Defs.' Mem. 4. The Court should reject this request because—by Defendants' own acknowledgment—it is inconsistent both with the relief the Court otherwise ordered in connection with election mail, and with express instructions from other courts that have likewise enjoined USPS practices in recent weeks.

The "Clarifying Operational Instructions" memorandum that USPS issued on September 21, 2020, explains that "[a]s of September 18, 2020, Headquarters has approved all requests to reconnect machines . . . and has provided Regional Vice Presidents with authority to reconnect machines where doing so is necessary." Clarifying Operational Instructions 3-4 (ECF No. 50-1). These instructions further explain that "if it is determined that it is necessary to add processing capacity to fulfill our service commitments with regard to Election Mail, available processing equipment will be returned to service." *Id.* at 4. The instructions are consistent with the preliminary injunction ordered by the district court in *Washington v. Trump*, which directed that "[i]f any post office, distribution center, or other postal facility will be unable to process election mail for the November 2020 election in accordance with First Class delivery standards because of the Postal Service's recent removal and decommissioning of equipment, such equipment will be replaced, reassembled, or reconnected to ensure that the Postal Service can comply with its prior policy of delivering election mail in accordance with First Class delivery standards." Order Granting Pls.' Mot. for Preliminary Injunction 12-13, ECF No. 81, *Washington v. Trump*, No. 20-cv-3127 (SAB) (E.D. Wash. Sept. 17, 2020).

3

Here, this Court has likewise ordered USPS to restore its prior practice of treating election mail entered as marketing mail in accordance with First Class delivery standards. An order directing that USPS need not reassemble *any* sorting machines removed from service under the now-enjoined practice would risk USPS's noncompliance with this Court's election mail-related injunction, as Defendants themselves acknowledge. Plaintiffs identified precisely this concern in their complaint and motion for a preliminary injunction. *See* Compl. ¶¶ 8, 84 (ECF No. 1) (noting that congressional testimony from the Postmaster General that he would commit to delivering election mail at First Class speeds "failed to account for how this commitment would play out in practical terms given that he was not rescinding the policies that were delaying delivery"); Pls.' Mem. Supp. Preliminary Injunction 12 n.8, 14, 19 (ECF No. 12-1) (same).

Defendants suggest that it "may not be possible" to return disassembled machines into service. Defs.' Mem. 4. But in making this suggestion, Defendants rely entirely on broad characterizations of how the agency "generally" treats machines that are removed from service, and makes no showing at all that it would be impossible or impractical to restore specific sorting machines to service in Plaintiffs' jurisdictions, if doing so were necessary to comply with the Court's Order. *See id.*; *see also* Clarifying Operational Instructions 3; Couch Decl. ¶¶ 10-12 (ECF No. 30-2) ("It would be impossible to undo the decommissioning and removal of *some* machines") (emphasis added). Plaintiffs' uncontested evidence showed that some sorting machines that were removed from service were "covered with a tarp, or otherwise roped off." Coradi Decl. ¶ 7 (ECF No. 12-34). Machines that were removed from service in this manner could readily be returned to service if necessary to comply with the Court's injunction.

More generally, the Court appropriately determined in issuing its opinion in this matter that "the proposed injunction does not contemplate the Court becoming involved in overseeing

4

the day-to-day operations of the USPS." *New York*, 2020 WL 5763775, at \*13.  The Court should accordingly reject Defendants' request that the Court weigh in on which sorting machines should be restored and when.  The current injunction operates to require USPS to take such operational steps as are necessary to comply with all parts of the Court's order, including to treat election mail in accordance with First Class delivery standards.  If restoring sorting machines to service is necessary for compliance, Defendants should not be excused from taking that step.[1]  *See, e.g.*, *Kirwa v. U.S. Dep't of Defense*, 315 F. Supp. 3d 266, 267-68 (D.D.C. 2018) (denying the defendants' motion to clarify because "the fact that defendants have to expend resources" to comply is not a reason to alter the court's order).

    2.  Defendants next ask the Court to clarify that the Court's preliminary injunction requiring that election mail entered as marketing mail be delivered in accordance with First Class delivery standards does not require transporting election mail by air.  Defs.' Mem. 5-9.  In bringing this action and seeking a preliminary injunction, Plaintiffs sought to assure timely delivery of election mail consistent with past USPS practice, rather than delivery by any particular mode of transport.  To the extent Defendants can comply with the Court's injunction and treat all election mail in accordance with First Class delivery speeds without relying on air transport, Plaintiffs will have no objection.  But there is no basis for the Court to make any

---

[1] Restoring at least some high-speed sorting machines to service may well be necessary for Defendants to comply with this Court's injunction because, notwithstanding Defendants' assertion that it has "more than sufficient capacity to process current and anticipated mail volumes with the existing machine fleet," Defs.' Mem. 5, service performance has *declined* in September even after the Court's injunction.  Nationally, on-time delivery for First Class mail dropped in September to the level of just 84.2% for the week of September 19 and 85.97% for the week of September 26—much lower than the range of 90 to 94 percent in the months preceding the Postal Policy Changes, and only slightly above the low of approximately 82 percent that the agency saw in late July and early August.  *See* U.S. Postal Service, Weekly Service Performance Report through September 26, 2020 (Ex. 1) (latest data as of October 8, 2020).

categorical statement that its Order *never* requires delivery of election mail by air, because the status quo ante did not include any such categorical ban on air transport for election mail, and because another district court order already requires air transport for election mail in certain circumstances.

In an agreed order negotiated by the parties and entered by the district court in *Jones v. U.S. Postal Service*, the court ordered USPS to "prioritize identifiable Election Mail that is entered as Marketing Mail, regardless of the paid class, including advancing Election Mail entered as Marketing Mail ahead of other Marketing Mail and processing it expeditiously so that it is generally delivered in line with the First-Class Mail delivery standards." Order ¶ 1(a), ECF No. 57, *Jones v. U.S. Postal Serv.*, No. 20-CV-6516 (VM) (S.D.N.Y. Sept. 25, 2020). The district court's order in *Jones* separately provided that the election mail requirement "shall not be construed to require USPS to change its policies that *generally* do not include the transportation of Election Mail entered as Marketing Mail by air," but that "USPS will employ special individualized measures to expedite handling of individual voter ballots mailed close to Election Day, regardless of paid class, *which may include manually separating them and moving them by air* or according to Priority Mail Express delivery speed standards, consistent with practices used in past elections." *Id.* at ¶ 1(b) (emphasis added). This provision makes clear both that USPS's past practice has at times included delivering election mail by air, and that USPS may be required by the district court's order in *Jones* to do so in connection with election mail for the 2020 general election.[2]

---

[2] USPS filed a similar motion to clarify the preliminary injunction in the *Washington v. Trump* action as in this case, and the district court there declined to categorically state that election mail entered as marketing mail need not be shipped by air; instead, the district court simply clarified that "the Court is not specifying that Election Mail entered as Marketing Mail be shipped by any

6

There is accordingly no need for the Court to clarify any part of its Order regarding expedited delivery of election mail.  The Court's Order does not specify that election mail entered as marketing mail must be transported by any particular means; and there is no reason for the Court to modify its Order to state that election mail categorically shall *not* be transported by air, which would be inconsistent with both past practice and the injunction entered by the district court in *Jones*.[3]  Defendants' request to clarify this part of the Court's Order should be denied.

In the alternative, the Court should defer consideration of this portion of Defendants' motion to clarify pending completion of expedited discovery on October 16.  In contending that "technical reasons" may prevent USPS from transporting election mail entered as marketing mail by air, Defendants rely on a supplemental declaration not previously before the Court.  Defs.' Mem. 6-8 (citing Supp. Declaration of Robert Justin Glass (ECF No. 54-1)).  Mr. Glass's deposition in this action is scheduled for October 16, 2020; to the extent Defendants rely on new evidence from Mr. Glass to contend that air transport is never operationally possible for transporting election mail, Plaintiffs intend to examine the witness about the basis for and credibility of these assertions on that date.

*3.*  Finally, Defendants ask the Court to clarify that USPS is not required to treat political mail in the same manner as election mail.  Defs.' Mem. 9-11.  Plaintiffs' complaint and motion for a preliminary injunction challenged Defendants' unlawful changes to the treatment of election mail, not political mail.  *See* Compl. ¶¶ 3, 30, 79-80, 84; Pls.' Mem. Supp. Preliminary

---

particular means (such as by air)."  Order ¶ 1(b), ECF No. 90, *Washington v. Trump*, No. 20-cv-3127 (SAB) (E.D. Wash. Oct. 2, 2020).

[3] As noted *supra*, the Court should deny this request for the independent reason that the Court has already stated that it does not intend through this injunction to become involved in overseeing the agency's day-to-day operations.  *New York*, 2020 WL 5763775, at *13.  Directing that a certain mode of transport shall *never* be used for election mail entered as marketing mail is precisely the kind of special-master role the Court appropriately disclaimed.

Injunction 11-12, 25-29, 33.  To the extent the Court's order directing that election mail be delivered in accordance with First Class delivery standards can also be read as applying to political mail, Plaintiffs do not object to clarification to state that it does not.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' motion to clarify except as to political mail.

DATED:  October 12, 2020

Respectfully submitted,

LETITIA JAMES
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo
  *Chief Counsel for Federal Initiatives*
Morenike Fajana, *Special Counsel*
Elena Goldstein, *Deputy Chief, Civil Rights Bureau*
Lindsay McKenzie, *Assistant Attorney General*
Laura Mirman-Heslin, *Assistant Attorney General*
Daniela L. Nogueira, *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
Matthew.Colangelo@ag.ny.gov

Joshua Tallent, *Assistant Attorney General*
Office of the New York State Attorney General
The Capitol
Albany, NY 12224

*Attorneys for the Plaintiffs*