# Exhibit 6

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, STATE OF CALIFORNIA, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF MAINE, COMMONWEALTH OF MASSACHUSETTS, and STATE OF NORTH CAROLINA,<br><br>Plaintiffs,<br><br>v.<br><br>LOUIS DEJOY, *in his official capacity as United States Postmaster General*; ROBERT M. DUNCAN, *in his official capacity as Chairman of the Postal Service Board of Governors*; and the UNITED STATES POSTAL SERVICE,<br><br>Defendants. | No. 2:20-cv-4096-GAM |

## DECLARATION OF RUTH Y. GOLDWAY

I, Ruth Y. Goldway, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I served on the U.S. Postal Regulatory Commission (the "Commission"), the agency that regulates the United States Postal Service (USPS or Postal Service), from 1998 to 2015.

2. I was first appointed to the Commission by President Bill Clinton in April 1998, and was reappointed by President George W. Bush in 2002 and 2008. In 2009, I was selected by President Barack Obama as chairwoman, a position I held until 2014. I left the Commission in November 2015.

3. I earned a B.A. from the University of Michigan in 1965 and received an M.A. in English Literature from Wayne State University in 1969.

4. I came to the Commission with a background in consumer protection and public service. Prior to my work on the Commission, I served as the Director of Public Affairs at California State University, Los Angeles; Mayor and Council Member of the city of Santa Monica; Assistant to the Director of California's Department of Consumer Affairs; and Manager of Public Affairs for the Getty Trust, the largest arts and education foundation in the U.S.

5. While serving on the Commission, I helped found and co-chaired Women in Logistics and Delivery Services, an organization dedicated to promoting opportunities for women in the postal, logistics and delivery services.

6. After leaving the Commission, I worked from 2016 to 2018 as an independent consultant to several research firms offering expertise on the Postal Service's operations to investors wanting to invest in publicly traded companies involved in the postal sector.

7. I am now fully retired.

8. I submit this Declaration in support of litigation against Louis DeJoy, in his official capacity as United States Postmaster General; Robert M. Duncan, in his official capacity as Chairman of the Postal Service Board of Governors; and the United States Postal Service.

9. I have personal knowledge of the facts set forth in this declaration. If called as a witness, I could and would testify competently to the matters set forth below.

I. **The Role and Work of the Postal Regulatory Commission**

10. The Commission is an independent agency with oversight and regulatory authority over the Postal Service. The Commission was created by Congress in 1970 as part of

the Postal Reorganization Act. Prior to 2006, the majority of the Commission's work focused on setting rate increases in response to requests from the Postal Service.

11.     After the Postal Accountability and Enhancement Act of 2006, the Commission gained expanded responsibilities. Among other things, the Commission is charged with: reviewing petitions by the public; adjudicating certain complaints against the USPS; reviewing requests by the Postal Service to close post offices, adjust rates, enter into negotiated service agreements, and make changes between market dominant and competitive products and services; assessing the financial and operational performance of the Postal Service; and ensuring that the Postal Service meets its commitments to universal service and to its service standards.

12.     A "service standard" is the official timeliness goal for delivering mail after receiving it from the customer. It is the Postal Service's public commitment to the sender and the recipient about how many days it will take a piece of mail to reach its destination. Service standards must "preserve regular and effective access to postal services in all communities, including those in rural areas or where post offices are not self-sustaining" and must "reasonably assure Postal Service customers [of] delivery reliability, speed and frequency consistent with reasonable rates and best business practices." 39 U.S.C. § 3691(b)(1)(B), (C).

13.     By law, the Postal Service must issue regulations that set the service standards for all market-dominant mail products—i.e., the mail products over which the Postal Service exercises a monopoly. *See* 39 C.F.R. pts. 121 & 122. The Postal Service establishes its service standards in consultation with the Commission. *See* 39 U.S.C. § 3691.

14.     The Postal Service must also report on the service performance of each market-dominant mail product. The service performance measures reliability: how often the Postal Service accomplishes its service standard. Service performance goals vary depending on the

class of mail, but generally the target is around 95%, which means the Postal Service delivers that class of mail on time (*i.e.,* within the number of days set in the service standard) 95% of the time.

15. As part of the Commission's oversight role, the Postal Service must provide the Commission with an annual report that measures, among other things, "the level of service (described in terms of speed of delivery and reliability) provided." 39 U.S.C. § 3652(a)(2)(B)(i). The Commission then issues an Annual Compliance Determination Report. 39 U.S.C. § 3653. Among other things, the report assesses whether any of the Postal Service's service standards were not met for the prior fiscal year.

16. The Commission's oversight role further includes reviewing changes in postal services that may impact service standards on a nationwide or substantially nationwide basis.

17. The law requires the Postal Service to submit a proposal to the Commission whenever it wants to make "a change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis." 39 U.S.C. § 3661(b).

18. Upon receiving such a proposal, the Commission reviews the proposal, accepts testimony and relevant factual documents, allows for discovery, submits written information requests to the Postal Service, allows for public comment and participation, accepts written briefs, and provides the opportunity for a hearing.

19. The Commission ultimately issues an advisory opinion based on the evidence. The opinion analyses the proposal, determines whether it will impact service on a nationwide or substantially nationwide basis, assesses whether the proposal will accomplish the stated goals of the Postal Service, and makes recommendations about whether and how the Postal Service should proceed with the proposed change.

20.     Through its oversight and regulatory role, the Commission helps ensure that the Postal Service maintains its commitment to reliable universal service and adheres to its service standards.

21.     For example, in 2010, the Postal Service requested that the Commission review a proposal to end the Saturday delivery of mail. Postal Regulatory Comm'n, *Advisory Opinion on Elimination of Saturday Delivery*, Docket No. N2010-1 (Mar. 24, 2011).[1] The Postal Service based its proposal "on its estimate of significant cost savings, reduced overall demand for postal services, and market research that projects relatively minor volume loses in reaction to these changes." *Id.* at 1. Upon review, the Commission determined that the cost savings were overstated by more than $1 billion, would cause up to $0.6 billion in net revenue losses, and would cause almost 25 percent of all First-Class and Priority mail to be delayed for two days. *Id.* The Commission also determined that the Postal Service had failed to assess the impact its proposal would have on people living and working in rural or remote locations. *Id.* The Postal Service ultimately declined to move forward with its proposal.

22.     In 2012, the Postal Service asked the Commission to review its Mail Processing Network Rationalization (MPNR) initiative, in which the Postal Service planned to consolidate mail processing and transportation networks to better match estimated mail volume. Postal Regulatory Comm'n, *Advisory Opinion on Mail Processing Network Rationalization Service Changes*, Docket No. N2012-1 (Sept. 28, 2012).[2] As proposed, the initiative would "eliminate all overnight delivery service for single-piece First-Class Mail, and delay much of current First-Class Mail 2-day delivery to 3-day delivery." *Id.* at 1. The Commission approved of the network

---

[1] https://www.prc.gov/docs/72/72327/Advisory_Opinion_032411.pdf.

[2] https://www.prc.gov/docs/85/85269/Advisory_Opinion_%20PDF%20_09282012.pdf.

rationalization effort in general, but presented the Postal Service with alternatives, not originally considered by the Service, that would accomplish this goal while preserving the current level of service for much of First-Class Mail. *Id.* at 45. The Commission also cautioned that benefits of moving forward as proposed would not outweigh the risks of exacerbating declining volume or harm to the Postal Service brand. *Id.* at 45. In response, the Postal Service considered the recommendations of the Commission and amended its plans so that it continued to deliver some portion of the mail on an overnight schedule until 2014, when additional changes to the network that further increased the number of days to delivery were submitted to the Commission for consideration. *See* Postal Regulatory Comm'n, *Advisory Opinion on Service Changes Associated With Standard Mail Load Levelling*, Docket No. N2014-1 (Mar 26, 2014).[3]

23. The Commission also provides the Postal Service with valuable analysis and guidance on how to best accomplish its goals of increased efficiency and cost-savings without impeding mail service and public access.

24. For example, in 2011, the Postal Service asked the Commission to review its Retail Access Optimization Initiative (RAOI), which reviewed post offices and other retail outlets to determine whether they could be closed without impairing public access and postal services. Postal Regulatory Comm'n, *Advisory Opinion on Retail Access Optimization Initiative*, Docket No. N2011-1 Dec. 23, 2011).[4] Among the goals of the RAOI was to "better align postal retail facilities with demand for such facilities," to capture cost-savings from the resulting closures, and to "improve efficiency and enhance customer convenience in the provision of retail

---

[3] https://www.prc.gov/docs/89/89493/Docket%20No.%20N2014-1_Advisory%20Opinion.pdf.

[4] https://www.prc.gov/docs/78/78971/N2011-1_AdvisoryOP.pdf.

services through use of alternate access." *Id.* at 40. Under the initiative, the Postal Service had identified more than 3,650 post offices, retail annexes, stations, and branches for possible closing. Upon review, the Commission concluded that the program was "not designed to optimize the retail network," would negatively impact service, and would strain the Postal Service's network and customer access. *Id.* at 1, 110-15. The Commission instead proposed alternatives to ways the Postal Service could consider meeting its goals of aligning service with demand. *Id.* at 64-81.

25. In 2012, the Postal Service returned to the Commission with a revised proposal to align postal services with demand and achieve cost savings with only limited reductions in access and service. Postal Regulatory Comm'n, *Advisory Opinion on Post Office Structure Plan*, Docket No. N2012-2 (Aug. 23, 2012).[5] The Postal Service proposed to "match post office retail hours with workload" by reducing the hours of operation at more than 13,000 post offices nationwide. *Id.* at 1. The Postal Service also proposed a "markedly improved process for obtaining input from affected communities" before closing a post office. *Id.* at 2. The Commission noted that the revised plan "incorporate[d] many of the recommendations the Commission made in its RAOI Advisory Opinion." *Id.* at 5. The Commission concluded that the new proposal was "a significant improvement over the previous Retail Access Optimization Initiative" and "commended the Postal Service for maintaining its current retail presence, especially in remote areas." *Id.* at 1. The advisory opinion also provided recommendations about access, community input, revue, and staffing. *Id.* at 2.

---

[5] https://www.prc.gov/docs/85/85013/N2012-2_Adv_Op_082312.pdf.

26. The Postal Service's monopoly on mail is balanced with regulatory oversight. As a regulator, one of the core functions of the Commission is to provide transparency and accountability whenever the Postal Service is making any change that could impact the reliable delivery of mail.

27. It is important that the public knows what to expect when they entrust the Postal Service with their mail. If the Postal Service is making a change that impacts the speed or reliability of the mail, it should do so transparently and publicly.

### II. The Postal Service's Recent Changes

28. The longstanding ethic of the Postal Service has been "every piece, every day": mail that comes in on a certain day should go back out on the same day.

29. Consistent with this ethic, Postal Service operations have traditionally had a certain amount of flexibility to ensure that mail will be delivered in accordance with the service standards. For example, I am aware that if the mail arrives late at a delivery unit, the local postmaster might sometimes personally deliver the mail himself to ensure that it does not remain at the delivery unit overnight. Likewise, I am aware that if the delivery unit is understaffed, the letter carrier might work a 10-hour shift to ensure that all the mail ready to be delivered that day is actually delivered.

30. I understand that the Postal Service, at the direction of Postmaster General DeJoy, recently made changes to some of its operations with the stated goal of improving adherence to transportation schedules. My understanding is that the Postal Service attempted to accomplish this goal by reducing or eliminating flexibility with regards to overtime, late and extra trips made by Postal Service trucks, and letter carrier start and stop times.

31. It is my opinion, based on my two decades of experience reviewing Postal Service operations, that eliminating local flexibility and requiring rigid adherence to transportation schedules would negatively impact service performance.

32. I also understand that the Postal Service has recently removed a significant number of mail processing machines.

33. I am also aware that the General Counsel for the Postal Service, Thomas J. Marshall, recently sent a letter to election officials that seemed to suggest the Postal Service would no longer provide extra care and attention to election-related mail, on the level of First-Class Mail, as it had in the past.

34. Based on publicly available information, it is my understanding that following the recent operational changes, the Postal Service experienced a significant decline in service performance across the country.

35. Changes to transportation and delivery operations that are likely to impact service performance should be presented to the Commission for an advisory opinion. In this case, the Commission could have cautioned the Postal Service that such changes would indeed negatively affect service performance and provided alternatives for how the Postal Service could meet its goal of improving on-time performance.

36. Even if the Postal Service did not know that its changes were likely to impact service standards, it should still have reported to the Commission once it became clear that the changes were preventing the Postal Service from meeting its existing service standards.

37. The purpose of the Commission is to provide oversight and transparency. The Postal Service has an obligation to the Commission and to the public to report in advance before making any change that will undermine the Postal Service's ability to meet its legal

commitments, including its service standards. And the Postal Service has a continuing obligation to the Commission and the public to report on changes that have undermined the Postal Service's ability to meet its service standards.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Executed on this 15th day of September, 2020

      /s/ Ruth Y. Goldway_____
      Ruth Y. Goldway