# Exhibit 17

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF NEW YORK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, et al., <br><br> Defendants. | Case No. 20 Civ. 2340 <br><br> DECLARATION OF SHEILA POOLE |

Pursuant to 28 U.S.C. § 1746(2), I, Sheila J. Poole, hereby declare as follows:

1. I am the Commissioner of the New York State Office of Children and Family Services ("OCFS") and have served in this capacity since 2019. As Commissioner of OCFS I am responsible for oversight of all agency policy and operations in furtherance of our mission to promote the safety, permanency and well-being of New York's children, families and communities. I have been employed by OCFS since 2007. Prior to becoming the Commissioner I served as Acting Commissioner, Executive Deputy Commissioner, Acting Executive Deputy Commissioner, and Associate Commissioner in the Division of Child Welfare and Community Services. I am over the age of eighteen and am familiar with the matters set forth herein, either from personal knowledge, information that has been given to me by my staff, or on the basis of documents that have been provided to and reviewed by me.

**Background on OCFS**

2. OCFS is an executive agency in New York State empowered by the Article XVII of the New York State Constitution to exercise its sovereign interest in protecting the well-being of children within its borders. OCFS's mission is to serve New York's public by promoting the

safety, permanency and well-being of our children, families and communities. OCFS's work covers child protective services, foster care, adoption, adult services, licensing of day care programs, run away and homeless youth programs, youth detention programs and operation of juvenile justice programs.

3. OCFS relies heavily on the U.S. Postal Service to handle over 1 million items of written communication each year necessary to the functions of OCFS. These written communications include provision of notices of rights and liabilities regarding licensing and employment, application materials, eligibility determinations, copies of records, and notice of outcomes of investigations and hearings to New Yorkers regarding subsidies or reimbursement for services to care for children.

4. OCFS is responsible for operating residential facilities for youth ages 7-23 placed with OCFS by the family court, as well as for youth convicted of a crime or adjudicated a youthful offender and committed to OCFS custody by a criminal court. *See* Exec. Law §§ 501; 504; 504-a; 507-a; 508; Fam. Ct. Act Art. 3; Penal Law § 70.20. These youth rely on the U.S. Postal Service to exercise their right to vote, and cannot vote in-person.

5. OCFS is responsible for certifying and regulating juvenile detention facilities in New York State. *See* County Law § 218-a; Exec. Law § 503; Fam. Ct. Act § 304.1; 9 NYCRR Part 180. These facilities house hundreds of youth across the state on a short-term basis. Youth in juvenile detention facilities similarly rely on the U.S. Postal Service to exercise their right to vote, and do not have the option of voting in-person.

6. In addition, much of OCFS's operations are governed by statutory provisions that require the agency and third parties with whom it interacts to act within specific timeframes which often depend upon use of the mail.

7.      For example, when youth housed in juvenile residential facilities are transferred from a limited secure facility to a secure facility, agency regulations require that a hearing be held within 72 hours of their transfer, and that the evidentiary material for the hearing be mailed to the attorney for the youth and the hearing officer at least 48 hours prior to the hearing. *See* 9 NYCRR 175-2. U.S. Postal Service delays could result in the hearings being dismissed, creating danger to youth whose behaviors cannot be managed outside a secure setting.

8.      OCFS regulates and oversees programs designed to protect runaway and homeless youth. If it is necessary for OCFS to take enforcement action against a runaway and homeless youth program, notices of hearing and statements of charges are required to be sent by mail to the operator 30 days prior to the hearing. *See* 9 NYCRR 182-1.14, 2.13. Any answer must be mailed no later than eight days prior to the hearing. *See id.* U.S. Postal Service delays may frustrate OCFS's ability to maintain such enforcement actions in a timely manner as hearings could be delayed due to the delay in operator's receipt of the statements of charges or delay in OCFS' receipt of the answer. Additionally, further delays could result if operators challenge OCFS's enforcement actions on the grounds that notices were not received as provided for by law.

9.      OCFS also has oversight over family type homes for adults, which are adult care facilities established to provide long-term residential care, room, board, and personal care, and/or supervision to adults. *See* 18 NYCRR 489.2.

10.     If OCFS believes that a family type home operator has violated regulatory requirements, it sends the operator a notice of violation by mail, and the operator has 30 days from the date of mailing to correct their non-compliance. 18 NYCRR 486.2. Operators whose licenses are suspended must request an administrative hearing with OCFS within 30 days of the agency's mailing of the notice of suspension. 18 NYCRR 486.4. If an application for a family type home

for adults operating certificate is denied, the operator must be served by mail with a notice of hearing 30 days in advance of the hearing. 18 NYCRR 343.3 and 489.4. A response to a notice of hearing and answer to the statement of charges must be postmarked no later than 15 days prior to the hearing and, depending on the nature of the enforcement action, received by OCFS either 5 or 10 days prior to the hearing. 18 NYCRR 493.7.

11. Finally, when a day care operator license is suspended, the owner must immediately close, and within 10 days from the date of the written suspension notice, notify OCFS in writing that she/he wants a hearing, and the hearing must be scheduled within 30 days. (SSL 390, 18 NYCRR §§ 413.3, 413.5). Often, such requests for hearings are sent by mail.

12. Consequently, U.S. Postal Service delays threaten to impede OCFS's administration of the law, thereby jeopardizing the health and well-being of the children, adults and families OCFS is charged with protecting.

**Fair Hearing Process**

13. OCFS's Bureau of Special Hearings ("BSH") provides the forum to challenge decisions made by local and state social services officials concerning a range of issues, including enforcement of day care regulations and laws, and challenging indicated child protective services reports, and other matters.

14. In many instances, statutory and/or regulatory deadlines govern the timing of processes relating to the scheduling and issuing of decisions. *See* SSL 390(10), SSL § 422, SSL § 424-a, 18 NYCRR § 413.3; 18 NYCRR § 413.5; 18 NYCRR § 434.3.(b); 18 NYCRR § 434.11.

15. Typically, an individual has 90 days to challenge a decision by the local department of social services to indicate a report of child abuse and/or maltreatment. There are shorter time frames in effect for owners or operators of day care programs regarding enforcement actions taken

by OCFS. This includes the operator having to notify OCFS in writing within 10 days of a suspension of their challenge to the suspension of the day care license and within 30 days of their challenge to a revocation of their day care license.

16. In 2019, BSH received over 5,600 hearing referrals, scheduled over 5,500 hearings and issued over 5,200 hearing decisions. These included over 1,500 hearings involving individuals who, among other things, were seeking employment or licensing opportunities. It also included over 387 hearings involving challenges to day care enforcement actions taken by OCFS against day care providers. Conducting an administrative hearing requires a significant amount of agency resources. In advance of the hearing, BSH must schedule and mail out notices to the parties. Conducting an administrative hearing requires the presence of a hearing officer (either in person or by video or telephone from their offices), the appellant and/or the appellant's representative, an attorney representing OCFS or the relevant agency, and any witnesses the parties wish to have testify in support of their case. Hearings are conducted by telephone, by video or in-person, at BSH offices located in New York City, Hauppauge, Rensselaer, New Windsor, Oneonta, Syracuse, Rochester and Buffalo and at local county DSS locations across the State of New York.

17. When an appellant does not appear for the scheduled administrative hearing and has not contacted BSH to request an adjournment, they default on their right to contest the agency's determination. Following a default, OCFS must mail the appellant a decision notifying them that they have defaulted and notifying them of their right to appeal the decision by filing an Article 78 proceeding. On average, OCFS issued approximately fifteen hundred default decisions in 2019.

18. An appellant who misses a scheduled hearing may request that BSH reopen and re-calendar the defaulted hearing. In order to reopen and re-calendar the hearing, the appellant must provide good cause for failing to appear at the scheduled hearing. An appellant claim of non-receipt of mail would satisfy good cause requiring a re-opening of the default and scheduling of a new hearing.

**Mail Delays will Negatively Impact OCFS's Administrative Hearing Process**

19. The inability of appellants to receive administrative hearing materials including the scheduling notices by mail in a timely fashion will result in more defaults and re-calendared hearings.

20. BSH expects to receive complaints from individuals who do not receive their notice in time and miss their hearing. This results in wasted staff time and resources and potential unnecessary delays for other appellants waiting to have their hearing scheduled. For appellants who seek to have the default lifted, OCFS must expend additional resources to review the appellant's reason for missing the hearing and make a determination as to whether it constitutes good cause.

21. In addition, hearings that are subsequently re-calendared require added time and resources to conduct a second hearing. Re-calendared hearings will further increase the potential backlog of hearings that need to be scheduled, therefore diverting agency resources.

22. In the normal course of operations, OCFS staff also handle questions and complaints from clients who contact the agency about their administrative hearings generally. As a result of the mail delays, BSH would anticipate receiving additional calls, emails and other correspondence from clients, as individuals regularly call BSH regarding issues with their

hearings, including the failure to receive scheduling notices or issued decisions. Increased calls due to mail delays would further burden staff time and resources.

**Mail Delays Harm OCFS's Operations**

23. As noted above, OCFS relies on the U.S. Postal Service to send and receive critical notices, to schedule administrative hearings and to issue decisions upon completion of those hearings.

24. Significant delays in mail will disrupt OCFS's operations, result in the forfeiture of client rights, and substantially undermine OCFS's mission to serve children and families across the state.

25. Delays in the delivery of OCFS correspondence may also lead to more questions and complaints from individuals seeking the status of their hearing requests, of mailed written decisions following such hearings, and individuals who missed their hearings altogether and need relief. Addressing these questions and complaints will require additional staff resources.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Executed on this 31st day of August, 2020

Sheila J. Poole
Commissioner
Office of Children and Family Services