# Exhibit 18

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF NEW YORK,<br>  28 Liberty Street<br>  New York, NY 10005 | |
| STATE OF HAWAII,<br>  425 Queen Street<br>  Honolulu, HI 96813 | Case No.: 20 Civ. 2340 |
| STATE OF NEW JERSEY,<br>  25 Market Street<br>  Trenton, NJ 08625 | DECLARATION OF<br>KAREN ROYE |
| CITY OF NEW YORK,<br>  100 Church Street<br>  New York, NY 10007 | |
| CITY AND COUNTY OF SAN FRANCISCO,<br>  1 Dr. Carlton B. Goodlett Place<br>  San Francisco, CA 94102 | |
| Plaintiffs, | |
| v. | |
| DONALD J. TRUMP, *in his official capacity as President of the United States*,<br>  1600 Pennsylvania Avenue<br>  Washington, DC 20500 | |
| LOUIS DEJOY, *in his official capacity as Postmaster General of the United States*,<br>  475 L'Enfant Plaza SW, Rm. 4012<br>  Washington, DC 20260 | |
| UNITED STATES POSTAL SERVICE,<br>  475 L'Enfant Plaza SW, Rm. 4012<br>  Washington, DC 20260 | |
| Defendants. | |

Pursuant to 28 U.S.C. § 1746(2), I, Karen Roye, hereby declare as follows:

1. I am over the age of 18 and have personal knowledge of all the facts stated herein.

2. I am Executive Director of the Department of Child Support Services ("CSS") for the City and County of San Francisco, a position I have held since 2004. In this role, I am responsible for all of CSS's operations and supervise its 81 budgeted employees. CSS's budget for the current fiscal year is $12.1 million. This is down from last year, when its budget was $12.8 million and 92 positions were allotted. Our budget is entirely drawn from federal and state grants to fund child-support programs at the local level, and is contingent on our meeting certain performance standards, such as ensuring the consistent receipt of support by children and parents entitled to such support ("custodial parents"), and maintaining the continued provision of support by parents with support obligations ("non-custodial parents").

3. CSS works with parents—both custodial and noncustodial—to ensure that children and families receive their court-ordered financial and medical support. Its services include: establishing parentage; locating absent parents; requesting child support orders from the court; requesting medical support orders from the court; enforcing child support orders; modifying child support orders; and enforcing spousal support orders in conjunction with child support. Its mission is to ensure that children receive the financial and medical resources they need from their parents to be healthy and successful. Currently, CSS manages approximately 10,000 cases.

4. CSS's responsibilities are substantially related to and intertwined with the work of the courts. To ensure due process and to comply with certain statutory requirements, written notice and hard documents are a large component of that work and, as a result, CSS is heavily reliant on the United States Postal Service ("USPS") to successfully discharge its duties. For example, all requests to CSS to modify child support obligations, or "review and adjustment" documents, are

mailed by the parties to CSS for review. If these documents are not received by CSS within strict regulatory timeframes, the review and adjustment process is terminated and the court is unable to modify the child support order. If a support order is not modified to reflect the current circumstances of a noncustodial parent, both parents may suffer financially—the noncustodial parent because the obligation may be too great and the custodial parent because no support payment may be forthcoming. During this COVID-19 pandemic, timely receipt and processing of review and adjustment applications are especially critical due to the increasing unemployment and financial hardships faced by our clients.

5. Similarly, notices of court hearings are sent by mail to the parties. Due process concerns arise when the parties do not timely receive proper notice of a hearing date because of delayed mail service, which impedes CSS's work. In particular, uncontested hearings may result in support orders that do not accurately reflect the parties' circumstances, generating hardships as explained above. Furthermore, rectification of these issues will require additional resources from CSS. While CSS also relies on telephonic communication, ultimately all relevant documents and paperwork must be transmitted through mail.

6. Delays in the mail may also delay the receipt of support payments by custodial parents, which harms both them and their children. Many families still receive child support payment via checks and rely on timely payments to pay their bills and buy food, clothes, medication, and other necessities. Such spending in turn supports the local economy.

7. Non-custodial parents are also harmed when the receipt of their payments are delayed because of late mail service. Payments that are untimely could result in the imposition of penalties and interest (10 percent per annum) on the non-custodial parent. Other collateral consequences could also occur, such as negative credit reporting; suspension of professional,

recreational, and driver's licenses and passports; and bank account levies.  Thus, it is imperative that documents sent to or from CSS through USPS are delivered in a timely and reliable manner.

8. The detrimental effects of mail delays on CSS's clients directly harms CSS.  As noted earlier, CSS's funding is largely contingent on meeting certain performance measures.  Interruptions in child support payments received by custodial parents and their children affect one performance measure.  Delays in the mail prevents CSS from efficiently processing its cases, impacting another performance measure.  In particular, when CSS is unable to timely process review and adjustment applications, thus creating financial hardship for non-custodial parents seeking modifications from their support obligations, such parents frequently become disengaged from CSS's services.  When they become less responsive, CSS must expend time and resources to try to re-engage them because failure to do so could result in the loss of support payments to non-custodial parents and children; it also leads to the need to utilize collection measures.  Both result in lower performance ratings for CSS and, thus, decreased funding.

9. Failure to timely process support modification requests due to late mail also has another horrific consequence:  increased domestic violence.  When a noncustodial parent faces increasing financial pressures that are not promptly resolved, stress and tension often arise between the noncustodial parent and custodial parent (and, at times, the child or children), which all too frequently leads to tragic outcomes.

10. The COVID-19 pandemic has created huge burdens for CSS and has made it even more reliant on mail.  People need resources more than ever due to increasing unemployment and diminishing financial means.  At the same time, those very same factors are making it harder for parents with support obligations to provide the resources required of them, resulting in a massive increase in the number of support modification requests that CSS has received and must process.

Such requests have increased by approximately 35 to 40 percent from before the pandemic. Lack of timely receipt of documents such as modification requests creates a backlog of cases, further augmenting the negative effects explained above.

11.   Because CSS's physical office is currently closed, an even more substantial amount of CSS's work must now be conducted by mail. For example, CSS previously served approximately 500 walk-in clients per year—now, instead of documents being completed or exchanged in-person, this work needs to be conducted entirely by mail. Again, given applicable court deadlines, the timely and dependable sending and receiving of mail through USPS is of paramount importance to CSS's work. Despite the move to telephonic and virtual hearings, CSS still requires receipt of hardcopy filings and paperwork to complete its mission.

12.   Even if CSS staff could return to the office, CSS would still be harmed by USPS's recent changes because the delays and decreased faith in mail services will likely result in an increase in in-person transactions, necessitating increased staffing and exposing CSS employees (as well as our clients themselves and the public) to greater risk of contracting COVID-19. Furthermore, in-person transactions take substantially more time (about double) to complete than telephonic or virtual transactions (supplemented by the mailing of documents).

13.   I am very concerned about the changes proposed at USPS that would result in delays in the mail because such delays would severely undermine the work that CSS does and seriously harm the health and welfare of the children and families it serves—many of whom are already severely disadvantaged and at risk due to their socioeconomic condition.

14.   CSS's operations manager has reported to me that many CSS clients are frustrated about the need to call CSS to confirm whether documents they have sent by mail have been received. Such inquiries have recently increased by about 30 percent.

15. We have also noticed that much of our recent mail has been delayed. We often look at the postmark of mail that is received. In the past, mail we received was frequently postmarked less than 10 days before. Now, we are receiving letters and package postmarked nearly a month ago.

16. My counterparts in other California jurisdictions and I have met and discussed how we can best address the steps taken by USPS that have resulted in mail delays. In these discussions, there were reports by others of mailboxes being removed and mail being received long after it was postmarked.

17. I am taking concrete steps to mitigate the harmful effects of mail delays on CSS. CSS will need to increase or redirect staff hours to address problems created by the delays, including setting up additional phone lines to provide case status updates or confirmations regarding the receipt and processing of critical legal documents to clients.

18. CSS is also planning an informational outreach campaign that will be conducted via the sending of postcards to inform clients about potential mail delays and to advise them of the need to plan ahead when mailing materials. CSS has also engaged a vendor to generate automated telephone calls and text messages to advise clients to mail all documents earlier than usual and to expect delays. These calls and text messages will be made as early as this weekend. We have already changed our automated phone system to advise callers to send mail early to avoid delays.

19. I anticipate that CSS will need three additional fulltime caseworkers to handle the additional work that will result from delays in the mail, including answering client inquiries about the status of cases and receipt of documents or resolving disputes regarding the timeliness of support payments. I would like to hire more people to deal with these issues, but because our

budget is limited and we have an allocated number of employees, I will instead have to take away resources from CSS's other critical operations.

20. I anticipate that CSS will spend or redirect approximately $500,000 to implement the foregoing measures—steps that are being taken directly in response to the USPS delays that are ongoing and anticipated, and that will take away from other areas of our work. The harm to CSS from the diversion of resources is exacerbated by the reduction in funding and staff that has occurred since the last fiscal year.

21. The harm that will be visited on CSS's client base shows that disadvantaged and minority communities will be disproportionately affected by USPS's changes. For perspective, approximately 57 percent of our clients are Black, 32 percent are Latinx, 10 percent are Asian/Pacific Islander, and less than one percent is Caucasian. For our average client, approximately 65 percent of their income comes from child support. Thus, in addition to the harm to CSS's operations, mail delays have real and devastating consequences for the approximately 10,000 cases we serve.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Executed on this 29th day of August, 2020

                                                         /s/Karen Roye\
                                                         Karen Roye