# Exhibit 22

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF NEW YORK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, et al., <br><br> Defendants. | Case No. 20 Civ. 2340 <br><br> SUPPLEMENTAL DECLARATION OF PETER CORADI |

Pursuant to 28 U.S.C. § 1746(2), I, Peter Coradi, hereby declare as follows:

**Personal Background**

1. I am over the age of eighteen and have personal knowledge of, or state upon information and belief, the facts stated herein.

2. I am the National Business Agent "A" for the Clerk Division, New York Region of the American Postal Workers Union ("APWU"), a position I have held since November 2001. The Clerk Division is the largest division of the APWU, representing approximately 150,000 postal clerks who work in over 200 different types of roles. Clerks in these roles perform work in mail processing, bulk mail entry, retail windows, call centers, and more.

3. As National Business Agent "A", I represent Clerk Craft employees[1] throughout the entire State of New York, as well as two large postal facilities in Northern New Jersey. As part of my duties, I represent postal employees in arbitration proceedings, grievance procedures, and labor management meetings; provide advice and guidance to local union chapters; and teach classes on a wide array of postal issues. In a typical year, these duties require me to visit postal

---

[1] Postal employees represented by the APWU's Clerk Division are referred to as "Clerk Craft" employees.

1

facilities across New York and in Northern New Jersey.

4. I began my postal career in Brooklyn, NY on August 4, 1984 as a letter carrier. I soon became a "special delivery" messenger, a type of role that was subsumed into the Clerk Craft in 1997. I became a national officer for the APWU in November 1996, when I first became a National Business Agent. After retiring from the U.S. Postal Service on October 31, 2009, I continued my work with the APWU. Today, I have 36 years of experience with the U.S. Postal Service.

## Executive Summary

5. This declaration updates and supplements my previous September 2, 2020 declaration in which I discussed the changes in the practices and procedures of the U.S. Postal Service that began in June and July 2020. I have continued to receive reports that the U.S. Postal Service policy of limiting late and extra trips is still in effect in New York, despite court orders directing that it be halted. In addition, there continue to be service issues, including delayed mail in certain areas.

## Continued Operational and Service Issues

6. As part of my APWU role to represent the interests of the Clerk Craft to management, I regularly communicate with current U.S. Postal Service employees about policy changes that may affect their work. In this capacity, I communicate with various union representatives – some of whom are retired and work for the union full-time, and others who are active Postal Service employees. I have recently communicated with union representatives throughout New York State who are familiar with postal operations in Brooklyn, Buffalo, Rochester, Syracuse, Westchester, and Western Nassau. The reports that I have received from these individuals indicate that the new policy of limiting late and extra trips is still in place,

despite court orders mandating that it cease. No one I spoke with has seen any document rescinding the guidelines prohibiting late and extra trips. Instead, they report that late trips are still not occurring, unless in extremely rare situations.

7. It has been reported that Extra trips are occurring on a limited and selective basis, but they are nowhere remotely close to pre-policy levels. It has been further reported that the highest-level management official at a facility, the plant manager, now makes the final determination that there will be an extra trip. Before the July 2020 policy changes, this decision was usually made by a lower level manager. Extra trips are being approved and/or ordered sporadically by plant managers.

8. The small sampling of facilities whose employees and union members I have communicated with are not located near each other and are from different postal districts, in two different postal areas. The similarities in how their approaches against any late trips and only some selective extra trips suggest that managers across New York State are following the same directives from U.S. Postal Service Headquarters.

9. Unsurprisingly, the continuation of the policy limiting late and extra trips has resulted in continued service issues. For example, an extra trip was recently ordered from the Buffalo, New York mail processing distribution center to the associate postal office in Olean, New York, which is approximately two hours away. The mail left the Buffalo facility on time and arrived at the Olean facility on time. However, since the mail carriers in Olean had already left for the street, the mail that arrived from Buffalo sat in the Olean facility undelivered.

10. The mail continues to be delayed in certain areas throughout New York and some delays are being caused by the removal of sorting machines. For example, this year the U.S. Postal Service removed and scrapped four of the twenty sorting machines at the Syracuse mail

processing facility—representing a 20 percent reduction. As a result, the facility cannot handle the volume of mail it is receiving and mail delivery continues to be delayed.

11. Through my communications with Postal Service staff, I have also heard of difficulties with overtime approvals and work hour reductions. In a Brooklyn mail processing facility, for example, some non-career employees (known as Postal Support Employees) are having their hours reduced. When mail arrives late at processing facilities, due to weather, vehicle breakdowns, road or traffic conditions, the staffing issues combined with the recent removal of mail sorting machines has led to increased mail delays.

12. Recent documents have been received, which are email communications from postal management disseminated to the field. One communication put forth a directive to immediately cease the long-standing practice of providing a cautionary notice to business customers regarding political mail and election mail. Additional postal management email communications to the field essentially informed the reader to instruct postal clerks to not prioritize election ballots received via mail. The directive advises the reader to not separate ballots. These email communications are concerning as they give the appearance of being in conflict with the mission of prioritizing mail ballots.

13. Based on the information I have received, I am skeptical that the U.S. Postal Service is making a genuine effort to comply with the recent court orders mandating that it stop the practices and procedures it enacted in June and July 2020. If the disastrous initiatives were actually immediately rescinded, there is no doubt in my mind that the chaos would abate and that U.S. Postal Service employees would be able to process and deliver mail in a timely, efficient, and professional manner—just as they have always done.

5

Executed on this 19th day of October, 2020.

/s/ *Peter Coradi*
    Peter Coradi