# Exhibit 64

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VOTE FORWARD, *et al.*,

           Plaintiffs,

v.

LOUIS DEJOY, *et al.*,

           Defendants.

Civil Docket No. 20-cv-02405 (EGS)

## NOTICE OF DATA IN RESPONSE TO THE COURT'S OCTOBER 27, 2020 ORDER

Pursuant to the Court's October 27, 2020 Order granting Plaintiffs' motion to enforce and monitor compliance,[1] Defendants provide the Court with "(1) updated data on the number of extra and late trips performed the preceding day, at the Nation, Area, and District level, including any available data that is specific to Election Mail, to the maximum extent feasible" and (2) "updated data on the percentage of on-time deliveries at the Nation, Area, and District level, including any available data that is specific to Election Mail to the maximum extent feasible."

Defendants again caution that this data is unreliable and does not reflect accurate service performance reporting for the reasons stated in their opposition to Plaintiffs' motion to enforce and the accompanying Declaration of Arslan Saleem. As explained in Defendants' opposition, this data is not appropriate for evaluating the Postal Service's performance throughout a week, and weekly data is significantly more useful for evaluating the Postal Service's performance

---

[1] Defendants maintain that Plaintiffs' motion was without basis for the reasons set forth in Defendants' opposition, including that (i) Defendants have complied with the Court's orders, (ii) the data that Plaintiffs request is in any event irrelevant to assessing Defendants' compliance, and (iii) requiring the Postal Service to produce such data would be burdensome and interfere with Postal Service operations in the days before the Election. Defendants provide the data herein subject to, and without waiving, their opposition to Plaintiffs' request.

across multiple weeks. Accordingly, Defendants maintain that the data possesses little to no analytical value and should not be considered a reliable indicator of performance. Bearing these limitations in mind, the Postal Service provides herewith the following data.[2]

**1.      Extra and Late Trips**

Exhibit 1 contains the most recent reasonably available nationwide data on the number of extra and late trips for all Divisions, Surface Transfer Centers (STCs), and International Service Centers (ISCs). The data reflects extra and late trips from October 1, 2020 to October 26, 2020. Nationwide extra and late trip data is not yet available for October 27, 2020; in general, the most recent available nationwide data as of 10 AM on a particular reporting day reflects data from two days prior to the reporting day (*i.e.*, the data provided today, October 28, 2020, reflects data through October 26, 2020). As noted, the data reflects extra and late trips for Divisions, STCS, and ISCs; the Postal Service does not track this data at the Area and District Level.

**2.      On-Time Delivery Percentages**

Exhibit 2 contains daily service performance data on the National, Area, and District levels for First-Class Mail and Marketing Mail from October 24, 2020 to October 27, 2020. This data does not produce accurate, reliable information, as it is incomplete, subject to change, and overall, is not an accurate representation of the Postal Service's performance, for several reasons.

---

[2] In addition, and pursuant to the Court's Order, on October 27, 2020, Robert Cintron sent an email to Area Vice Presidents, Managers of Operations Support, and any other USPS personnel who were previously informed about that the guidelines issued on July 14, 2020 stating, "The guidelines issued on July 14, 2020, regarding the use of late and extra trips are rescinded. USPS personnel are instructed to perform late and extra trips to the maximum extent necessary to increase on-time mail deliveries, particularly for Election Mail. To be clear, late and extra trips should be performed to the same or greater degree than they were performed prior to July 2020 when doing so would increase on-time mail deliveries. Any prior communication that is inconsistent with this instruction should be disregarded."

First, the data provides information only about the performance of mail within the Postal Service's operational network, *i.e.*, the time between its first and last processing operations, or the "processing score." It does not incorporate the "First Mile," which represents the time from acceptance of the mailpiece (*e.g.*, from a collection box or retail unit) to the first processing operation, or the "Last Mile," which tracks mailpieces from their last processing scan to delivery. "First Mile" and "Last Mile" data are not incorporated because those measurements are derived from a statistically valid system of randomly sampled mail, and the results of the sampling are not available as of the time of this filing. First and Last Mile scores are incorporated into the longer-term Service Performance scores, but this takes several days to determine, and, as such, it is not possible to include with this filing.

Second, as noted in the Declaration of Arslan Saleem, "the Postal Service has observed that individual days during the week tend to exhibit unique and differential service performance patterns that would be misleading and unhelpful when taken out of a longer-term service picture; Sundays, in particular (on which mail is not delivered), tend to distort service scores early in the following week. As such, Mondays typically have a greater volume of mail, and correspondingly lower service scores." Saleem Dec. ¶ 8. Accordingly, the data provided herein does not reflect actual service performance.

Third, the data provided here is not complete, as full information is not available at the time of this filing. As explained in Mr. Saleem's declaration, daily scores do not provide an accurate depiction of what ultimate scores for that day will be, as the scores can shift for a variety of reasons. *See id.* ¶¶ 5–6. For example, if a piece was scheduled to be delivered on Wednesday but was actually delivered on Friday, that delay would not be apparent from the Wednesday daily data and would only be incorporated into the Postal Service's data after it was

3

delivered on Friday. *Id.* ¶ 5. The data could also change for other reasons, including additional scans received due to a change of address. *Id.* ¶ 6. As such, this data is subject to change with each updated daily report.

Exhibit 3 contains data pertaining to three subsets of Election Mail: (1) mailpieces that are electronically identified on "entry" as Election Mail and that are also trackable using the Postal Service's Intelligent Mail Barcode (IMB) feature; (2) Election Mail that bears service type ID (STID) codes embedded within the IMB specifically identifying the Mail as ballots outgoing to voters; and (3) Election Mail that bears STID codes that specifically identify the Mail as ballots from incoming voters. The Postal Service again cautions, however, that this data does not provide a representatively accurate measurement of Election Mail service performance because only a subset of Election Mail is sent using IMBs and ballot-specific STID codes. In addition, each of the Election Mail service figures tracks the performance of Election Mail within the Postal Service's operational network, which is the mailpiece's time between its first and last processing operations. As with the data provided in Exhibit 2, these service performance figures also do not incorporate the "First Mile" or "Last Mile." Bearing these limitations in mind, the Postal Service provides, herewith, processing scores for the three subsets of Election Mail described above. The Postal Service was not able to produce Election Mail service performance data on the Area or District Levels by today's deadline but is currently assessing its ability to do so for future filings.

The Postal Service considers all of the service performance data filed today to be commercially sensitive and not subject to public disclosure under 39 U.S.C. § 410(c). Because the service performance information is incomplete, subject to change, not representatively accurate, and potentially misleading or confusing, it would not be released under good business

4

practices. With respect to the daily service performance data generally, the Postal Service considers this to be commercially sensitive in that it is not consistent with its approved service performance rules and inconsistent with the methodology used in developing the data that the Postal Service discloses publicly. With respect to the Election Mail service performance data specifically, because the Postal Service is only able to measure a subset of Election Mail, the service performance scores are not representatively accurate measurements of the service performance of all Election Mail handled by the Postal Service. The data is also a subset of First-Class Mail and Marketing Mail data that is more disaggregated than is otherwise publicly shared. Nor does the Postal Service otherwise report on a combination of a subset of First-Class Mail and Marketing Mail in this manner in other contexts. As such, this information is commercially sensitive in nature and would not be disclosed under good business practices. USPS is providing the information pursuant to the Court's Order, but reserves the right to assert the confidential nature of this information in other contexts.

Dated: October 28, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ERIC R. WOMACK
Assistant Director, Federal Programs Branch

/s/ John Robinson
JOSEPH E. BORSON
KUNTAL CHOLERA
ALEXIS ECHOLS
DENA M. ROTH
JOHN ROBINSON (D.C. Bar No. 1044072)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
(202) 616-8489
john.j.robinson@usdoj.gov

*Attorneys for Defendants*