**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Civil Docket No. 20-cv-2340 (EGS) |

## <u>DEFENDANTS' MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, TO MODIFY THE PRELIMINARY INJUNCTION</u>

When this Court entered a preliminary injunction against the United States Postal Service in this matter, it made clear that the injunction was not intended to "micromanage the operations of the USPS" and did not "contemplate the Court becoming involved in overseeing the day-to-day operations of the USPS." *New York v. Trump*, No. 20-CV-2340(EGS), 2020 WL 5763775, at *10, *38 (D.D.C. Sept. 27, 2020). The Postal Service now respectfully requests that the Court clarify that the preliminary injunction does not prohibit the Postal Service from moving a limited number of mail-processing machines to improve service and accommodate an unprecedented growth in package volume.

Most urgently, the Postal Service seeks to remove five "Flats Sequencing System" (FSS) machines used to process "flats" (*e.g.*, larger envelopes, newsletters, and magazines) and replace them with newly purchased machines that sort packages, including medications. As to these five machines, the Postal Service respectfully requests a ruling from the Court by **April 1, 2021**, to ensure that the new package machines are in place in time for the Postal Service's next peak

season. As explained below, the flats volume in the facilities from which the FSS machines will
be removed will be consolidated onto remaining FSS machines at the facilities, which have
ample capacity for the current levels of flat-mail volume. Accordingly, the removal of the FSS
machines should not result in any adverse operational impacts, and the new package machines
are necessary to improve service overall.

Defendants do not believe that any of the proposed machine moves described herein—
which are limited to those that are operationally necessary—implicate the Court's preliminary
injunction. Nevertheless, out of an abundance of caution, Defendants respectfully request that the
Court clarify that the preliminary injunction does not prohibit the Postal Service from making
these proposed moves. Alternatively, if the Court concludes that the proposed moves do
implicate the preliminary injunction, Defendants respectfully request that the Court modify the
injunction to allow these limited changes. Pursuant to Local Rule 7(m), counsel for Defendants
conferred with counsel for Plaintiffs, who stated that they do not consent to this motion.

## BACKGROUND

On September 27, 2020, this Court entered a preliminary injunction enjoining Defendants
from enforcing certain alleged "Postal Policy Changes." *New York*, 2020 WL 5763775, at *2.
Those changes included a plan described in June 2020 as "removing 671 high-speed sorting
machines nationwide over the next several months." *Id.* On August 18, 2020, the Postal Service
suspended any further removal of the machines until after the election, *see* ECF No. 30-3 Ex. 10,
and, following preliminary injunctions issued by this court and a district court in the Eastern

District of Washington,[1] the Postal Service continued its suspension of the removal of the machines. *See* Clarifying Operational Instructions, at 3–4, ECF No. 50-1.

Because the volume and type of mail flow at postal facilities is constantly changing, the Postal Service continuously evaluates its network of mail-processing machines and whether that network is optimized to expedite the delivery of mail. Since the November election, the Postal Service has made a small number of machine moves between facilities or to and from storage, including moving two machines to Atlanta, Georgia, to expand processing capacity for the January 2021 run-off election. *See* Declaration of Jason DeChambeau ¶ 3. Although the Postal Service did not believe that those moves were prohibited under the preliminary injunction, Defendants, out of an abundance of caution, notified Plaintiffs before making the moves. The Postal Service has refrained from removing any mail-processing machines since the Postal Service's August 18, 2020 announcement and the Court's September 27, 2020 injunction. *Id.*

While the Postal Service has no plans to systematically reduce the number of mail processing machines, the Postal Service has now determined that it must move or remove a limited number of additional mail-processing machines to optimize service and avoid mail delays. These limited moves are necessary to, among other things, ensure that the Postal Service's machines are placed where they are needed most, that the appropriate types of machines are available where needed most, that outdated machines are replaced with newer models, and that machines are configured in such a way so as to ensure optimal processing capacity and speed. As the Postal Service's Director of Processing Operations, Jason DeChambeau, explains in the attached declaration, the circumstances in which machine moves

---

[1] *See* Order, *State of Washington v. Trump*, No. 20-cv-03127-SAB (E.D. Wash. Sept. 17, 2020), ECF No. 81. The *Washington* plaintiffs have since voluntarily dismissed their action.

are necessary generally fall within the following four categories, which may overlap in certain situations.

1.  **Moving Unnecessary Machines to Make Room for New Package-Sorting Machines or Manual Package Sorting and Staging**

In recent years, the volume of letter mail and flats has declined significantly, especially since the start of the COVID-19 pandemic. *See* DeChambeau Decl. ¶ 6. At the same time, the Postal Service has observed unprecedented growth in package volume, which has also increased during the pandemic. *Id.* As a result of the growth in package volume and the decline in letter and flat volume, many postal facilities cannot accommodate package volumes at their current capacity limits. The Postal Service needs to replace some unneeded mail-processing machines with package-sorting machines and to create more space on the workroom floor for manual package sorting and staging to increase its capacity to sort packages, including time-sensitive items such as medications. *Id.* ¶ 14.

In many plants, the volume of packages is so large that there is insufficient capacity to handle and process mail and packages, thus impeding timely delivery of mail as well as packages. Expanded package processing capability is necessary to avoid the kind of gridlock experienced this past peak season, which negatively impacted not only package, but also letter and flat mail service performance. *Id.* ¶ 11.

Most urgently, the Postal Service must remove five unnecessary "Flats Sequencing System" (FSS) machines in five different facilities to allow those machines to be replaced by newly purchased package-sorting machines. *Id.* ¶ 13. The flats volume in these facilities will be consolidated onto other FSS machines in these facilities, which have ample capacity for the current levels of flat mail volume. *Id.* ¶ 15. Thus, there will be no adverse operational impacts on

flat mail. *Id.* At the same time, the new replacement machines will allow the Postal Service to meet the critical need for additional package processing. *Id.* ¶ 12.

The Postal Service needs to remove the FSS machines by April 1, 2021, to ensure that the new package machines are in place for the next peak season. *Id.* ¶ 14. Each machine requires five to six weeks to remove (the machines are approximately the size of a football field). Once the machine is removed, an additional several weeks are required to prepare the site for installation. *Id.* Additional time is required to coordinate staffing, adjust floor plans, obtain necessary approvals, and conduct site surveys. *Id.* Accordingly, if the removal of the FSS machines does not commence by the beginning of April, the Postal Service will not be able to put each of the five package processing machines in place in time for the 2021 peak season.

The Postal Service anticipates that during the course of the year there may be other instances requiring movement of unnecessary machines in order to make room for package processing. The adjustments that require removing the five FSS machines, however, are especially urgent and time sensitive.

  2. **Moving Redundant Machines To Facilities With Greater Need**

While the volume of letter mail and flats has declined overall, due to the dynamic nature of mail volumes across the nation, volume fluctuations sometimes result in certain facilities requiring more mail-processing machines than they currently have. *Id.* In these circumstances, moving a mail-processing machine that is redundant in one facility to another facility where it is needed is critical to improving service and to avoiding delays for mail and packages, including medications. *Id.* ¶ 11, 17–19. By moving mail-processing machines from plants where they are not needed to plants where they are needed will help the Postal Service deliver mail on time, and

it will also create needed space in the plant where the machine is removed to expand package

processing operations, whether by machine or manually.

**3.    Removing Machines That Are No Longer Necessary Because of the Addition of "Stacker Modules" On Other Machines**

The Postal Service seeks to remove certain Delivery Barcode Sorter (DBCS) machines

where doing so would improve processing. *Id.* ¶¶ 20–24. These machines use "bins" to sort mail

and are designed to allow configurations with variable numbers of bins. *Id.* In some

circumstances, the Postal Service can improve processing times by removing bins from one

machine and then adding them to other machines in the facility to extend the machine and

increase its sorting capacity. *Id.* By reconfiguring and extending machines in this way, the Postal

Service can expand processing capacity on the remaining machines and avoid having to rerun

mail through the sort function, which increases the overall operational capacity within the same

operational time windows. *Id.* The Postal Service seeks to remove machines from which bins

have been taken or will be taken and added to other machines to allow faster mail processing and

to free up space for other operational activities, such as package processing.

**4.    Removing Machines That Are Outdated to Make Room for Newer Machines**

The Postal Service has several machines in its inventory that are simply outdated. *Id.*

¶¶ 25–27. The Postal Service can improve timely service by replacing the outdated machines

with newer machines with improved technology. *Id.* For example, the Postal Service seeks to

remove certain "Advanced Facer Canceler System" (AFCS) legacy machines from certain

facilities and replace them with newer AFCS machines. *Id.*

**LEGAL STANDARD**

"The general purpose of a motion for clarification is to explain or clarify something

ambiguous or vague" in a court order. *New York v. Trump*, No. 20-CV-2340(EGS), 2020 WL

6

6572675, at *2 (Oct. 22, 2020) (quoting *United States v. Philip Morris USA Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011)). Although "'[t]here is no Federal Rule of Civil Procedure governing "motions for clarification,"' . . . courts in this Circuit have encouraged parties to file motions for clarification when they are uncertain about the scope of a ruling, . . . and entertaining such motions seems especially prudent if the parties must implement the ruling at issue at subsequent stages of the litigation." *Id.* (quoting *Philip Morris*, 793 F. Supp. 2d at 168) (concluding that Defendants had met the threshold requirements for seeking clarification and granting motion to clarify Court's preliminary injunction in this case).

Courts also have discretion to modify a preliminary injunction in light of changed circumstances. *See, e.g.*, *Doe 2 v. Shanahan*, 755 F. App'x 19, 22 (D.C. Cir. 2019) (reversing denial of motion to dissolve preliminary injunction in light of changes to challenged policy); *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 109 F. Supp. 3d 626, 635 (S.D.N.Y. 2015) (dissolving preliminary injunction because plaintiffs' claims had become moot), *aff'd*, 815 F.3d 105 (2d. Cir. 2016); *Johnson v. Freeman*, No. 05-cv-1266-ERW, 2005 WL 8176829, at *2 & n.2 (E.D. Mo. Aug. 8, 2005) (dissolving preliminary injunction where plaintiffs could no longer demonstrate irreparable harm). Federal Rule of Civil Procedure 54(b) authorizes the Court to revise its interlocutory orders "at any time." The Supreme Court has recognized that this power of a district court to modify a preliminary injunction "is long-established, broad, and flexible." *Brown v. Plata*, 563 U.S. 493, 542 (2011).

## ARGUMENT

The proposed actions that the Postal Service seeks to take in its ongoing efforts to improve timely service performance and efficiency are part of its everyday operations that are unrelated to the specific actions required by the preliminary injunction issued by the Court in this

case. Congress has delegated to the Postal Service the authority to acquire, hold, maintain, sell, or dispose of personal property "as it deems necessary or convenient in the transaction of its business," to construct, operate, lease, and maintain equipment, and to "have all other powers incidental, necessary or appropriate to carrying on its functions or the exercise of its specific powers." 39 U.S.C. § 401(5), (6), (10). The Postal Service exercises this authority as part of its broader power "to provide for the collection, handling, transportation, [and] delivery" of mail. *Id.* § 404(a)(1).

While the proposed machine moves described herein do not implicate the specific actions required by the preliminary injunction, the Postal Service has nonetheless endeavored to work with plaintiffs in this case and others before taking any actions that involve removing machines from Postal Service facilities, out of an abundance of caution and in the interests of full transparency. *See* DeChambeau Decl. ¶ 3. The same interests make the filing of the present motion necessary, as Plaintiffs disagree with the Postal Service's proposed machine moves despite Defendants' efforts to explain that these adjustments are directed at expediting delivery of mail and packages.

In the preliminary injunction, this Court enjoined enforcement of the "Postal Policy Changes," defined to include a plan to "remov[e] 671 high-speed sorting machines nationwide over the next several months," which was part of a nationwide "equipment-reduction initiative" that the Postal Service began in 2017 to improve network operational efficiency. *See New York*, 2020 WL 5763775, at *2; ECF No. 30-2 at 17–26 (prior declaration of Mr. DeChambeau explaining 2017 initiative). However, the proposed machine moves that are the basis for the present motion are unrelated to the nationwide initiative that the Postal Service began in 2017. The 2017 initiative involved the planned removal of hundreds of machines every year, including

approximately 671 machines in the final months of 2020. The Court held that Plaintiffs were likely to succeed on their claim that the Postal Service could not implement the "Postal Policy Changes" without requesting an advisory opinion from the Postal Regulatory Commission in accordance with 39 U.S.C. § 3661(b), which requires the Postal Service to seek such an opinion when the Postal Service determines that there should be a "change in the nature of postal services" that will "generally affect service on a nationwide or substantially nationwide basis."

The proposed machine moves described in this motion, by contrast, are limited to changes that the Postal Service has determined are necessary on a plant-specific basis to improve timely service and prevent mail and package delays. They are not part of an across-the-board effort to reduce the number of machines in the network, and have largely arisen from requests from various field facilities. In some instances, the proposed moves involve simply moving a processing machine from a location where it is not needed to a location where it is needed. In other instances, machines are simply being replaced with newer machines, including desperately needed package-sorting machines. In other instances, machines are being reconfigured to optimize sorting capacity, thus eliminating the need for redundant machines at the same facility.

By its terms, the preliminary injunction does not address such situationally dependent changes; nor do Defendants believe that the Court intended to prohibit such limited, operationally necessary changes. Indeed, even in granting Plaintiffs' motion for a preliminary injunction, the Court recognized that it was "clear" that Congress "did not intend for the courts to micromanage the operations of the USPS" and that the injunction "does not contemplate the Court becoming involved in overseeing the day-to-day operations of the USPS." *New York*, 2020 WL 5763775, at *10, *38 (D.D.C. Sept. 27, 2020); *see also Buchanan v. U.S. Postal Serv.*, 508 F.2d 259, 262–63 (5th Cir. 1975) (Congress intended that Postal Service would enjoy "broad

authority in postal management" to ensure the management is not "unjustly hampered in its efforts to administer the Department in a businesslike way"). Were it otherwise—if the Postal Service were required to seek an advisory opinion at least 90 days before ever moving or removing any machine for any reason, *see* 39 C.F.R. § 3020.112—the Postal Service would lack the ability to effectively manage and optimize its network of thousands of machines.

Alternatively, even if the actions described above fell within the terms of the Court's preliminary injunction, the Court should modify the injunction to allow the limited types of moves described above, which are part of the Postal Service's day-to-day operations. The Court enjoined the planned removal of 671 sorting machines in the lead-up to the November 2020 election after the Court found that "the combination of the reduction of late trips, extra trips and reduced sorting capacity puts the timely delivery of election mail at risk." *New York*, 2020 WL 5763775, at *10. But the election has come and gone, and Plaintiffs cannot assert that they will suffer irreparable harm if the Postal Service implements the planned moves. To the contrary, the machine moves and removals described above are needed to improve timely service and prevent mail and package delays. DeChambeau Decl. ¶¶ 7, 27. Accordingly, it would be in neither Plaintiffs' nor the public's interest to keep in place an injunction that would cause the same harms it was designed to avoid.

## CONCLUSION

Defendants respectfully request that the Court grant Defendants' motion for clarification of the preliminary injunction order or, alternatively, modify the preliminary injunction. Specifically, Defendants request that the Court enter the following order (a proposed order reflecting these terms is attached):

The Court hereby ORDERS that the Court's Order, ECF No. 51, is clarified to reflect the following:

10

The preliminary injunction does not prohibit the Postal Service from moving or removing mail-processing machines in the following circumstances: (1) removing or relocating mail-processing machines in order to open floor space needed for other operations, including new package-sorting machines or manual package sorting and staging, (2) moving mail-processing machines from facilities where machines are not needed to facilities where machines are needed, (3) removing machines that are no longer necessary because the addition of stacker modules (sort bins on machines) has increased the capacity of the remaining machines, and (4) removing machines that are outdated to make room for newer machines.

The preliminary injunction otherwise remains in effect.

For the reasons explained above, Defendants respectfully request a ruling at least as to the five "FSS" machines by **April 1, 2021**.

Dated:  March 10, 2021                         Respectfully submitted,

                                               BRIAN M. BOYNTON
                                               Acting Assistant Attorney General

                                               ERIC R. WOMACK
                                               Assistant Director, Federal Programs Branch

                                               /s/ John Robinson
                                               JOSEPH E. BORSON
                                               KUNTAL CHOLERA
                                               ALEXIS ECHOLS
                                               DENA M. ROTH
                                               JOHN ROBINSON (D.C. Bar. No. 1044072)
                                               Trial Attorneys
                                               U.S. Department of Justice
                                               Civil Division, Federal Programs Branch
                                               1100 L. Street, NW
                                               Washington D.C. 20005
                                               (202) 616-8489
                                               john.j.robinson@usdoj.gov

                                               *Counsel for Defendants*