UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH R. BIDEN, JR., *in his official capacity as President of the United States*, *et al.*, <br><br> Defendants. | Civ. Action No. 20-2340(EGS) |

### MEMORANDUM OPINION AND ORDER

On September 27, 2020, the Court preliminarily enjoined Defendants from enforcing four Postal Policy Changes that the United States Postal Service ("USPS" or "Postal Service") announced and implemented in June and July 2020: (1) the removal of high-speed sorting machines nationwide; (2) the prohibition of "'late trips' and 'extra trips'"; (3) the "Expedited to Street / Afternoon Sortation" initiative; and (4) the decision to change the "USPS policy of treating election mail and political mail marked as marketing mail on an expedited First-Class basis." Mem. Op., ECF No. 52 at 5-8; Order, ECF No. 51.[1] On May 12, 2021, Defendants filed a Motion for Clarification or, in

---

[1] When citing electronic filings throughout this Order, the Court cites to the ECF page number, not the page number of the filed document.

the Alternative, to Modify the Preliminary Injunction. *See* Defs.' Mem. Supp. Mot. Clarification ("Defs.' Mot."), ECF No. 90-1. Plaintiffs filed their opposition brief and a Cross-Motion to Enforce the Preliminary Injunction on May 26, 2021. *See* Pls.' Opp'n, ECF No. 91; Pls.' Mem. Opp'n Mot. Clarification & Cross-Mot. Enforce Prelim. Inj. ("Pls.' Cross-Mot."), ECF No. 92-1. Upon consideration of the parties' motions, the responses and replies thereto, the applicable law, and the entire record, the Court **GRANTS** Defendants' motion and **DENIES** Plaintiffs' motion.

**I. Background**

   **A. Defendants' Proposed Changes**

On April 30, 2021, Defendants filed a Notice describing "recent actions by the Postal Service to implement a process to improve supplier selection and data collection for extra trips in its network surface transportation system." Notice, ECF No. 89 at 1. According to Defendants, USPS generally contracts with third-party Highway Contract Route suppliers, rather than postal employees, to perform the work for network surface transportation. Defs.' Mot., ECF No. 90-1 at 7. The contracts "require suppliers to transport mail according to specific schedules and service levels," as well as permit USPS to request extra trips that are billed at a pre-negotiated rate. *Id.* The new process—which USPS tested from April 14, 2021 to April 23, 2021—"required field network facilities seeking an extra trip

2

for network surface transportation to submit a transportation request to the Surface Planner Group, which is a team of Headquarters logistics personnel." Notice, ECF No. 89 at 3. Once the request was submitted, the Surface Planner Group would then "review[] the request, check[] data systems to identify available local trips, and ma[k]e a decision based on service needs and costs as to which supplier should be used." *Id.* "The process was intended to ensure that managers responsible for arranging surface transportation selected the supplier and trip that best meets service standards at the lowest cost for the trip." Defs.' Mot., ECF No. 90-1 at 7-8.

USPS re-implemented two aspects of the new process, involving a vendor selection tool and better tracking and collection of logistics data, on May 17, 2021. Defs.' Mot., ECF No. 90-1 at 9 n.3. However, Defendants seek clarification regarding two other aspects of the new process that permit the Surface Planner Group to deny extra trips in certain situations. First, Defendants seek clarification that the preliminary injunction does not prohibit denial of extra trips "where an extra trip would not be service responsive."[2] Defs.' Mot., ECF

---

[2] "'Service responsive' is a term used by the Postal Service 'to describe trips that deliver mail within the published service standards approved by the Postal Regulatory Commission.'" Defs.' Mot., ECF No. 90-1 at 10. "Service standards, in turn, reflect the target goal for the time a mailpiece or package is expected to take from origin to the final destination." *Id.* "The Postal

3

No. 90-1 at 5. Second, Defendants seek clarification that the preliminary injunction does not prohibit denial of extra trips "where not using the extra trip would result in delay of only a small volume of mail, specifically, less than 15% of the truck's capacity." *Id.*

### B. Procedural History

On May 12, 2021, Defendants filed a Motion for Clarification or, in the Alternative, to Modify the Preliminary Injunction. *See* Defs.' Mot., ECF No. 90-1. Plaintiffs opposed the motion and filed a Cross-Motion to Enforce the Preliminary Injunction on May 26, 2021. *See* Pls.' Opp'n, ECF No. 91; Pls.' Cross-Mot., ECF No. 92-1. Defendants filed their reply in support of their motion and opposition to Plaintiffs' cross-motion on June 9, 2021, *see* Defs.' Reply, ECF No. 94; Defs.' Opp'n, ECF No. 95; and Plaintiffs' filed their reply brief on June 1, 2021, *see* Pls.' Reply, ECF No. 96. The motions are ripe for the Court's adjudication.

---

Service further defines 'service responsive' as requiring that mail must arrive at the ultimate destination processing facility, which is the facility that will process the mail for delivery, by the 'critical entry time' (CET)" which is "the time by which the mail needs to be received by a facility to be included in that day's processing and then transported to delivery units (e.g. post offices) for delivery by letter carriers the next day." *Id.*

4

**II. Legal Standard**

"[T]here is no Federal Rule of Civil Procedure specifically governing 'motions for clarification.'" *United States v. Philip Morris USA Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011). "The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." *Id.* "Although such a motion cannot open the door to 're-litigat[ing] a matter that the court has considered and decided,' *Sai v. Transp. Sec. Admin.*, No. 14-cv-403, slip op. at 5 (D.D.C. Aug. 19, 2015), ECF No. 74 (citation omitted)[;] courts in this Circuit have encouraged parties to file motions for clarification when they are uncertain about the scope of a ruling, *see United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 344 (D.C. Cir. 2014); *Barnes v. Dist. of Columbia*, 289 F.R.D. 1, 12-13 (D.D.C. 2012)[;] and entertaining such motions seems especially prudent if the parties must implement the ruling at issue at subsequent stages of the litigation." *All. of Artists & Recording Cos. v. Gen. Motors Co.*, 306 F. Supp. 3d 413, 418-19 (D.D.C. 2016). By clarifying the scope of a previously issued preliminary injunction, a court "add[s] certainty to an implicated party's effort to comply with the order and provide[s] fair warning as to what future conduct may be found contemptuous." *See N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984).

In addition, a court may modify an injunction in its "equitable discretion." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017). In determining whether such relief is warranted, "[i]t is ultimately necessary . . . to balance the equities—to explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Id.* (citation omitted). "The party seeking modification bears the burden of establishing that a significant change in circumstances warrants its revision." *Gov't of Province of Manitoba v. Zinke*, 849 F.3d 1111, 1117 (D.C. Cir. 2017) (quotation marks omitted). "A party may meet this initial burden by showing a significant change either in factual conditions or in law. In particular, modification is appropriate when enforcement without modification would be detrimental to the public interest." *Id.* (cleaned up). "Ultimately, the court must, in its discretion, decide 'whether the requested modification effectuates or thwarts the purpose behind the injunction.'" *Hudson v. Am. Fed'n of Gov't Emps.*, 281 F. Supp. 3d 11, 14 (D.D.C. 2017) (quoting *Sierra Club v. U.S. Army Corps of Engineers*, 732 F.2d 253, 257 (2d Cir. 1984)).

## III. Analysis

### A. The Preliminary Injunction Does Not Prohibit Defendants' Proposed Changes

As a threshold matter, the Court must determine which standard of review applies to Defendants' motion. While Defendants insist that they have met their burden under either standard, Defendants argue that their proposed changes do not implicate the preliminary injunction and thus they seek clarification "out of an abundance of caution." Defs.' Mot., ECF No. 90-1 at 6. In Defendants' view, the Court's preliminary injunction enjoined only a "ban" on late and extra trips. *Id.* at 15. Plaintiffs, on the other hand, argue that the Court should treat Defendants' motion as a motion to modify the Court's preliminary injunction. Pls.' Cross-Mot., ECF No. 92-1 at 14. Plaintiffs argue that Defendants "actually seek . . . to carve out exceptions to the Court's prohibition on the reduction of late and extra trips." *Id.* The Court's prior opinion thus warrants clarification because it is reasonably susceptible to differing interpretations as to whether the preliminary injunction enjoined a ban or a reduction on late and extra trips. *See Alliance of Artists & Recording Cos., Inc.*, 2016 WL 9963947, at *4.

The Court agrees with Defendants and clarifies that the preliminary injunction enjoined a "ban" on late and extra trips.

7

Plaintiff is correct that certain statements in the Court's Memorandum Opinion could be read to suggest that the Court intended to enjoin only a reduction. For example, in its Opinion, the Court acknowledged that Defendants had clarified that "late and extra trips are not 'banned,'" and found that Plaintiff's evidence indicated that a significant reduction in such trips had resulted in nationwide delays in mail delivery. *See, e.g.*, Mem. Op., ECF No. 52 at 7, 16. However, the Court did not intend for these statements to create uncertainty. To the contrary, the Court's Order entering the preliminary injunction against Defendants enjoined them "from enforcing the Postal Policy Changes," Order, ECF No. 51; which was explicitly defined within the Memorandum Opinion to include, among other things, USPS measures "prohibiting 'late trips' and 'extra trips,'" Mem. Op., ECF No. 51 at 6. At the time, the Court relied on USPS data showing the significant decline in the number of late and extra trips as evidence of the impact that USPS's calls to eliminate such trips had on mail delivery—and, at the very least, as evidence of the confusion following USPS's conflicting messaging regarding whether such trips were fully authorized. *Compare* Cintron Decl., ECF No. 30-1 at 23 (describing guidelines "for Elimination of Extras and Lates"), *and* Ex. 36 to Pls.' Reply, ECF No. 40-7 at 2 (noting that USPS's "focus is to eliminate unplanned extra transportation"), *with* Defs.' Opp'n, ECF No. 30

8

at 26 n.6 (stating that the July 10, 2020 USPS memorandum stating that late and extra trips were not authorized "does not represent official USPS policy" and "mischaracterizes USPS policy and the USPS's initiative to encourage compliance with transportation schedules").

Furthermore, to the extent that orders issued in related cases are relevant here, the October 27, 2020 Minute Orders issued in *National Association for the Advancement of Colored People v. USPS*, No. 20-2295 (D.D.C. Oct. 27, 2020), and *Vote Forward v. DeJoy*, No. 20-2405 (D.D.C. Oct. 27, 2020), do not support Plaintiffs' position. Far from prohibiting Defendants from reducing late and extra trips in all circumstances, the Court's Minute Orders in those cases instead directed Defendants to issue a notice or deliver a Stand-Up Talk to certain employees clarifying that (1) the Cintron Guidelines, which regarded efforts to eliminate late and extra trips, were rescinded; and (2) "late and extra trips should be performed to the same or greater degree than they were performed prior to July 2020 when doing so would increase on-time mail deliveries." *Id.*[3] The Minute Orders are therefore consistent with an

---

[3] The Minute Orders directed, in part, the following:
It is hereby ORDERED that by no later than 9:00 AM on October 28, 2020, Defendants shall issue a one-page notice to Area Vice Presidents, Managers of Operations Support, and any other United States Postal Service ("USPS") personnel who were

injunction enjoining the elimination of late and extra trips, a directive that had been announced in July 2020. *See* Pls.' Mot. Prelim. Inj., ECF No. 12-1 at 5. In view of the above, the Court shall thus construe Defendants' motion as a motion for clarification, not modification.

Defendants request that the Court clarify that the preliminary injunction does not prohibit the Postal Service's

---

previously informed about the guidelines issued on July 14, 2020, by USPS Vice President of Logistics, Robert Cintron, regarding the use of late and extra trips: (1) "The guidelines issued on July 14, 2020, by USPS Vice President of Logistics, Robert Cintron, regarding the use of late and extra trips are rescinded;" and (2) "USPS personnel are instructed to perform late and extra trips to the maximum extent necessary to increase on-time mail deliveries, particularly for Election Mail. To be clear, late and extra trips should be performed to the same or greater degree than they were performed prior to July 2020 when doing so would increase on-time mail deliveries. Any prior communication that is inconsistent with this instruction should be disregarded." It is FURTHER ORDERED that by no later than 9:00 AM on October 29, 2020, Defendants shall issue a one-page notice to, or deliver a Stand-Up Talk to, all USPS personnel who may have job responsibilities related in any way to late and extra trips, stating that: "Late and extra trips will be approved to the maximum extent necessary to increase on-time mail deliveries, particularly for Election Mail. Any prior communication that is inconsistent with this should be disregarded. To be clear, late and extra trips will be approved to the same or greater degree than they were performed prior to July 2020 when doing so would increase on-time mail deliveries."
*National Association for the Advancement of Colored People v. USPS*, No. 20-2295 (D.D.C. Oct. 27, 2020); *Vote Forward v. DeJoy*, No. 20-2405 (D.D.C. Oct. 27, 2020).

Surface Planner Group "from declining to approve extra network trips (i.e., unscheduled, usually long-distance trips, as opposed to local trips . . .)" in two situations: "where an extra trip would not be service responsive"; and "where not using the extra trip would result in delay of only a small volume of mail, specifically, less than 15 percent of the truck's capacity." Defs.' Mot., ECF No. 90-1 at 5. Defendants argue that its requested changes do not constitute a ban on late and extra trips and are "consistent with the Postal Service's historic practice" of "consider[ing] the total volume of mail relative to the cost when deciding whether to order an extra trip." *Id.* at 15. Defendants also contend that the "proposed clarification is consistent with the text and purpose of 39 U.S.C. § 3661, the statutory basis for the Court's preliminary injunction." *Id.* at 16. According to Defendants, the proposed changes are consistent with this standard because (1) declining to approve an extra trip when it would not be service responsive would not result in more timely service, and (2) declining to authorize an extra trip when the truck is less than 15 percent full would have a "virtually immeasurable effect on overall compliance with service performance goals, while the cumulative costs of proceeding with each and every possible extra trip would be financially irresponsible." *Id.*

11

Plaintiffs oppose the clarification. Plaintiffs argue that it is "evident" that the proposed changes will cause delays in mail delivery. Pls.' Cross-Mot., ECF No. 92-1 at 11. First, Plaintiffs argue that denying extra trips that would not be service responsive would, "in practical terms," mean that "[m]ail that is already delayed will be permitted to be delayed even later." *Id.* The proposed change also "assumes that the next regularly scheduled trip is running on time and has capacity for the delayed mail, which is not always the case." *Id.* Second, Plaintiffs argue that the proposal to deny extra trips where the truck is less than 15 percent full is essentially a request "that the Court bless a 'cost' exception to its injunction regardless of the impact on service." *Id.* at 12. Plaintiffs contend that the standards Defendants use in describing the proposed change are "vague" and "do not prove any specifics as to how much mail will actually be delayed by this policy." *Id.* For example, it is unknown how much mail would constitute 15 percent of a transport truck's capacity, and Defendants do not define "significant expenses." *Id.* Plaintiffs also assert that, under USPS's proposal, "even if a truck was filled beyond 15 percent capacity, an extra trip could be denied under the new policy" if "other alternatives that will timely deliver the mail product are located or there is capacity on the next scheduled trip." *Id.* at 13.

In view of the Court's clarification that the preliminary injunction enjoins a prohibition on late and extra trips, the Court concludes that the injunction does not prohibit the Postal Service from implementing its proposed changes. As stated above, the Court entered its Order on September 27, 2020, enjoining Defendants from enforcing the Postal Policy Changes, which included a plan to prohibit the use of extra and late trips. Order, ECF No. 51; Mem. Op., ECF No. 52 at 6-7. The Court determined at that time that it was likely that Plaintiffs could show that Defendants' overall "dramatic operational changes" would have, among other things, a meaningful impact on service that would be felt on a nationwide basis. Mem. Op., ECF No. 52 at 23, 27; *see also* 38 U.S.C. § 3661(b) (requiring the Postal Service to seek an advisory opinion from the Postal Regulatory Commission when the Postal Service determines that a plan represents "a change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis"). Thus, in view of the Court's conclusion that the "combined" effect of the Postal Policy Changes "put[] the timely delivery of election mail at risk," the Court held that the Postal Service could not proceed with the Postal Policy Changes without first seeking an advisory opinion from the Postal Regulatory Commission. Mem. Op., ECF No. 52 at 29.

Here, Defendants' proposed changes do not constitute a prohibition on late and extra trips, nor does it appear that they would have a meaningful impact on service that would be felt on a nationwide basis. First, regarding the denial of extra trips that would not be service responsive, Defendants have explained that in such a situation, "mail would not arrive at its final destination any later than if the Postal Service had run an extra trip," and, "[i]f there is insufficient capacity on the next regularly scheduled trip, and no reasonable means of delivering the mail only one day later, then the Postal Service would run the extra trip, *regardless of capacity*." Defs.' Reply, ECF No. 94 at 13-14 (emphasis added). Thus, Plaintiffs' fears that already delayed mail would be delayed even further pursuant to this proposal are unfounded.

Second, regarding the denial of extra trips where the transporting truck is at less than 15 percent capacity, Defendants have asserted that this would be a rare occurrence, *id.* at 17 (noting that "during the April 2021 initial implementation of the new process, only 'one of the over 700 extra trip requests—less than 0.2 percent of requests—was denied on the grounds of low volume of mail"); and that to allow trips in such a situation would be, in USPS's view, "financially irresponsible," *see* Defs.' Mot., ECF No. 90-1 at 11. Based on Defendants' representations, implementing this proposal would

14

therefore likely have a "minimal effect on the general class of postal users" and "meaningful impact on service." *Buchanan v. U.S. Postal Serv.*, 508 F.2d 259, 262 (5th Cir. 1975) (explaining that Section 3661(b) does not apply to "[m]inor alterations which have a minimal effect on the general class of postal users," or where there is no "meaningful impact on service"). However, the Court is mindful that the Postal Service's initial testing of the proposed changes was limited in both duration and scope, and there is little to no concrete evidence regarding the new process's future impact on a nationwide scale. *See* Defs.' Mot., ECF No. 90-1 at 9 (stating that the new process was tested over a period of nine days, with 736 trips impacted). Therefore, to ensure that the proposed changes do not unintentionally grow to meaningfully affect service on a nationwide or substantially nationwide basis, the Court shall require Defendants to file a status report in 90 days with updated data on the number of extra trips denied based on the two grounds described here.

### B. Defendants Are Not in Violation of the Court's Preliminary Injunction

Finally, Plaintiffs argue that Defendants are violating the Court's preliminary injunction. Pls.' Cross-Mot., ECF No. 92-1 at 9. They request that the Court order USPS to "comply and require the agency to file a report within 90 days of the Court's order identifying trip levels and steps taken to achieve

15

pre-July 2020 levels." *Id.* at 10. However, Plaintiffs' argument is based upon the mistaken belief that the Court enjoined a reduction of late and extra trips. *See id.* at 9-10. As explained above, the Court's preliminary injunction instead enjoined a prohibition on late and extra trips. Thus, for the reasons discussed in Section III, Part A, the Court does not find that Defendants are in violation of the preliminary injunction.

**IV. Conclusion**

For the foregoing reasons, the Court **GRANTS** Defendants' motion for clarification or, in the alternative, to modify the preliminary injunction, and **DENIES** Plaintiffs' cross-motion to enforce the preliminary injunction.

Accordingly, it is **ORDERED** that the Court's Order, ECF No. 51, is clarified to reflect the following: The preliminary injunction does not prohibit the Postal Service from declining approval for extra network trips pursuant to the following principles: (1) where an extra trip would not be service responsive, and (2) where not using an extra trip would delay a volume of mail that is no greater than 15% of the truck's total capacity.

It is **FURTHER ORDERED** that the parties shall file a joint status report by no later than August 30, 2021, proposing the parameters of a data request—to be due 90 days from the date of this Order—identifying the number of extra trip requests denied

on the grounds that the trip would not be service responsive and the number of extra trip requests denied on the grounds of low volume of mail.

The preliminary injunction otherwise remains in effect.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**August 23, 2021**