UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATE OF NEW YORK, et al.,

        Plaintiffs,

  v.

JOSEPH R. BIDEN, JR., *in his official capacity as President of the United States*, et al.,

        Defendants.

Case No. 20 Civ. 2340

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO ALTER OR AMEND THE JUDGMENT**

# TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................................... **1**

**BACKGROUND** ............................................................................................................................. **3**

**STANDARD OF REVIEW** ............................................................................................................ **5**

**ARGUMENT** ................................................................................................................................... **6**

    I.   Defendants' Motion Does Not Qualify for Rule 59(e) Relief. ............................................. 6

    II.  The Ten-Percent Provision Does Not Violate Rule 65(d)(1)............................................... 7

    III. The Court Should Not Amend its Order to Add an Intent or Knowledge Element, or a Causation Standard. ........................................................................................................... 10

    IV. The Court Should Not Alter the Requirement that the Postal Service Must Review Weekly Service Performance. .......................................................................................................... 12

**CONCLUSION** .............................................................................................................................. **13**

`

# **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*Common Cause v. Nuclear Regul. Comm'n*,
   674 F.2d 921 (D.C. Cir. 1982) ............................................................................................. 9

*Diag Hum. S.E. v. Czech Republic-Ministry of Health*,
   2014 WL 11461052 (D.D.C. Dec. 24, 2014) ..................................................................... 6-7

*Jones v. United States Postal Serv.*,
   2020 WL 6554904 (S.D.N.Y. Sept. 29, 2020) ................................................................... 8-9

*Leidos, Inc. v. Hellenic Republic*,
   881 F.3d 213 (D.C. Cir. 2018) ........................................................................................ 5, 6, 12

*Niedermeier v. Office of Baucus*,
   153 F. Supp. 2d 23 (D.D.C. 2001) ..................................................................................... 5, 7

*Schmidt v. Lessard*,
   414 U.S. 473 (1974) .......................................................................................................... 7, 8

*United States v. Philip Morris USA Inc.*,
   566 F.3d 1095 (D.C. Cir. 2009) ............................................................................................ 7

**STATUTES**

39 U.S.C. § 3661(b) ............................................................................................................ *passim*

**RULES**

Fed. R. Civ. P. 59(e) ................................................................................................... 6-7, 12-13

Fed. R. Civ. P. 65(d)(1) .................................................................................................... 3, 6-9

**OTHER AUTHORITIES**

*Advisory Opinion Concerning a Proposed Change in the Nature of Postal Services*, Postal Rate Comm'n, Apr. 22, 1976 (N75-1) ................................................... 9

*Request of the United States Postal Service for an Advisory Opinion on Changes in the Nature of Postal Services*, Postal Reg. Comm'n, July 27, 2011 (N2011-1) ........................ 9

# **INTRODUCTION**

After considering evidence and extensive briefing by the parties, this Court issued a lengthy memorandum opinion granting in part and denying in part cross-motions for summary judgment in this case. *New York v. Biden*, No. 20-CV-2340, --- F. Supp. 3d ---, 2022 WL 5241880 (D.D.C. Oct. 6, 2022). The Court granted the States declaratory relief and crafted an injunction tailored to address the Postal Service's failure to seek an advisory opinion before implementing an initiative focused on eliminating late and extra trips, an effort the Court concluded was the "primary factor" in slowing mail service nationwide. *Id.* at *21. Specifically, the Court enjoined the Postal Service "from prohibiting such trips in total or from curtailing such trips to the extent that nationwide service scores decline on average by more than 10 percentage points for a period of at least two-weeks, without first seeking an advisory opinion from the [Postal Regulatory Commission] pursuant to 39 U.S.C. § 3661(b)." *Id.* In other words, the Court ordered that if service performance falls by the specified amount, the Postal Service may not continue the same conduct that the Court highlighted in its opinion as harmful to the timely delivery of mail. And, the order only enjoins such conduct if the Postal Service does not first seek an advisory opinion from the Postal Regulatory Commission.

Using a strained reading of that injunction divorced from the context in which it was issued, and requesting unnecessary modifications to address questions the Court has largely already decided, Defendants now seek to remove one of the few obligations on the Postal Service that has emerged from this litigation.[1] Defendants argue that removal of the Ten-Percent

---

[1] Because the Postal Service has maintained throughout this litigation that it never prohibited late and extra trips, the portion of the injunction enjoining a prohibition would not appear to restrict any operations it seeks to undertake.

Provision[2] is warranted because that provision could be read to proscribe actions based on whether they decrease service by ten percentage points. Defs. Mem. 1. And, Defendants argue, because the Postal Service "cannot know in advance" which actions will yield such an effect, the Court's order violates Rule 65(d)(1)'s requirement that an injunction state its terms specifically and describe the acts restrained in reasonable detail. *Id.* at 1-2. Defendants alternatively request several modifications to the Ten-Percent Provision. Defendants argue that because the injunction could be read to prohibit a curtailment in late and extra trips which reduces service by the specified amount "regardless of the Postal Service's intent," *id.* at 1, the Court should modify its order to specify that the Postal Service "must intend or reasonably foresee that its actions will have a ten-percent impact on service," *id.* at 2. Defendants also ask the Court to specify "the type of 'causal' link" that must be shown between the reduction in late and extra trips and reduction in service performance, specifically requesting that the Court amend its order to require that the former must be a "proximate cause" of the latter. *Id.* at 6, 14. And, Defendants request that the order reflect a quarterly, rather than weekly, service performance window, such that the injunction will only be triggered if service scores decline ten percent "from one quarter to the succeeding quarter." *Id.* at 15 n.8.

The Court should reject Defendants' requests. Even assuming any ambiguity in the Court's order, clarification of the Ten-Percent Provision, not wholesale removal, is appropriate.[3] In any event, the Court's order does not operate the way Defendants claim. As noted above, the Ten-Percent Provision enjoins the curtailment of late and extra trips only if nationwide service

---

[2] "Ten-Percent Provision" has the same meaning as that term is used in Defendants' motion.

[3] Indeed, the Postal Service moved on several occasions to clarify the Court's preliminary injunction order when it sought to address a perceived ambiguity. *See* ECF Nos. 54, 83, 90.

2

performance has decreased more than ten percent over a two-week period. Thus, the Court's order complies with Rule 65(d)(1)'s mandate that it provide fair notice of the prohibited conduct.

For the same reason, the order does not require modification to make explicit an intent requirement or causation standard. As to intent, the injunction already contemplates such a requirement: it prohibits the Postal Service from intentionally curtailing late and extra trips <u>if service has decreased ten percent across a two-week period</u> unless the Postal Service first seeks an advisory opinion. Accordingly, the Court need not clarify that the Postal Service must have "intended or reasonably known that a reduction in trips would cause a reduction in service," Defs. Mem. 5, because this reflects an incorrect reading of the order, and in any event, the Court has already concluded that reducing late and extra trips harms service. Similarly, adding a causation standard to the order is unwarranted because the Court's injunction is informed by its finding that reducing late and extra trips was the "primary factor" in reducing service performance. Finally, because Defendants' request to modify the window to calculate service performance from weekly to quarterly is based on the same flawed interpretation of the Court's order, and because Defendants do not separately claim any burden or hardship in reviewing service performance on a weekly basis, the Court should also reject this request.

## BACKGROUND

The States filed this action challenging several abrupt operational changes implemented by the Postal Service that adversely impacted mail service, including a July 2020 initiative focused on the elimination of late and extra trips. *See generally* Compl., ECF No. 1 (defining these changes together as the "Postal Policy Changes"). As the Court has previously observed, "late trips" occur when postal drivers "depart for post offices or delivery points a short period *after* the prescribed time if needed to ensure that all the mail for that truck would be loaded before departure." *New York v. Trump*, 490 F. Supp. 3d 225, 233 (D.D.C. 2020). And

3

"extra" trips are "non-scheduled delivery trips, which ensure that the agency can maintain the necessary flexibility to timely deliver mail to 160 million addresses for six days a week, and have long allowed the agency to account for daily fluctuations in mail volume, processing malfunctions or errors, and other disruptions." *Id.*  Both late and extra trips "are needed adjustments to adequately administer a system responsible for delivering over 470 million pieces of mail per day. They are features of the postal system, not bugs." *Id.*

On October 6, 2022, the Court granted in part and denied in part the parties' cross-motions for summary judgment. *New York*, 2022 WL 5241880.  In granting the States' motion as to their 39 U.S.C. § 3661(b) claim, the Court rejected Defendants' argument that the States lacked standing because they failed to demonstrate that the Postal Policy Changes caused the mail delays.  *Id.* at *6 ("[T]hough Defendants argue that 'the historical evidence demonstrates that these USPS policy changes cannot be causing the mail delays,' . . . the Court disagrees.").

In addressing the merits, the Court concluded that the Postal Service's initiative regarding late and extra trips constituted a "change" that effected a "meaningful impact on service," crediting evidence in support of its finding that "the changes to and impacts on the USPS transportation schedule contributed to the decline in on-time delivery rates in July 2020." *Id.* at *12.  The Court also pointed out that the Postal Service's own personnel "acknowledged the connection between the decrease in service performance and its efforts to mitigate late and extra trips nationwide." *Id.*  In addition, the Court rejected Defendants' argument that the Postal Service did not violate 39 U.S.C. § 3661(b) because it never officially prohibited such trips; the Court concluded that "even if the official policy was never to 'ban' such trips, the 'focus' was to eliminate them." *Id.*

4

Although the Court granted the States' motion as to their 39 U.S.C. § 3661(b) claim, it limited declaratory and injunctive relief to one of the five Postal Policy Changes challenged in this case, *i.e.*, the Postal Service's initiative concerning late and extra trips. *Id.* at *21. The Court identified this initiative as the "primary factor" in slowing nationwide service. *Id.* Accordingly, it tailored its relief to this finding, entering an order "enjoin[ing] the Postal Service from prohibiting such trips in total or from curtailing such trips to the extent that nationwide service scores decline on average by more than 10 percentage points for a period of at least two-weeks, without first seeking an advisory opinion from the [Postal Regulatory Commission] pursuant to 39 U.S.C. § 3661(b)." *Id.*

## STANDARD OF REVIEW

"Federal Rule of Civil Procedure 59(e) provides a limited exception to the rule that judgments are to remain final." *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018) (citing *Derrington–Bey v. Dist. of Colum. Dep't of Corrs.*, 39 F.3d 1224, 1225 (D.C. Cir. 1994)). "Motions under Fed. R. Civ. P. 59(e) are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001) (citing *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998)). A Rule 59(e) motion may not be used to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Leidos, Inc.*, 881 F.3d at 217 (citations omitted). Rather, a court may grant a motion to amend or alter a judgment "under three circumstances only:" (1) if there is an intervening change of controlling law; (2) if new evidence becomes available; or (3) if the judgment should be amended in order to correct a clear error or prevent manifest injustice. *Id.* (citation omitted).

## ARGUMENT

### I. Defendants' Motion Does Not Qualify for Rule 59(e) Relief.

Because the purported basis for Defendants' motion does not fall within the three categories noted above, it should be denied. *See Leidos, Inc.*, 881 F.3d at 217 (Rule 59(e) relief may be granted "under three circumstances only"). Defendants do not argue that there has been a change in law, that new evidence is available in this case, or that the Court's order is clearly erroneous or causes manifest injustice. Rather, Defendants assert that the Court's order should be amended because it violates Rule 65(d)(1), and that other modifications or clarifications to the injunction are warranted. *See generally* Defs. Mem. Such grounds are not appropriate bases for relief under Rule 59(e). *Leidos, Inc.*, 881 F.3d at 217.

The Court should also reject Defendants' request that it recognize a new basis for relief under Rule 59(e). Defendants assert that a Rule 59(e) motion is appropriate when "the moving party did not have the opportunity to present the relevant evidence or argument before judgment." Defs. Mem. 4. In support of this assertion, Defendants cite *Diag Hum. S.E. v. Czech Republic-Ministry of Health.*, No. 13-CV-0355, 2014 WL 11461052 (D.D.C. Dec. 24, 2014). But that district court opinion is distinguishable. In *Diag Hum. S.E.*, the court dismissed a suit *sua sponte* for lack of subject matter jurisdiction. *Id.* at *2. After dismissal, the court accepted the plaintiff's submission under Rule 59(e) because it reasoned that the plaintiff had "no opportunity" to address the issue of subject matter jurisdiction before dismissal. *Id.* Here, by contrast, Defendants have briefed the Court on the appropriate scope of relief in this case and argued in their summary judgment briefing that the States' requested relief "fail[ed] to satisfy the applicable specificity requirement." *See* Defs. Mem. Summ. J. 44-45, ECF No. 67. The Court took Defendants' argument into account when issuing its ruling, tailoring its injunctive relief to one of the five operational changes challenged in the litigation. *See New York*, 2022 WL

5241880, at *21 (modifying the terms of proposed injunctive order in light of Defendants' argument that the States' requested order was vague). Defendants' reliance on *Diag Hum. S.E.*, which in any event is non-binding, is therefore unavailing.[4]

## II. The Ten-Percent Provision Does Not Violate Rule 65(d)(1).

The Ten-Percent Provision complies with Rule 65(d)(1) of the Federal Rules of Civil Procedure. That Rule provides that an injunction must "state the reasons why it issued;" "state its terms specifically;" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). "The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). At its core, Rule 65(d)(1) reflects a mandate that injunctions provide "fair notice" of the conduct they prohibit. *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1137 (D.C. Cir. 2009).

The permanent injunction entered in this case satisfies this standard.[5] Defendants claim that the Court's order does not comply with Rule 65(d)(1) because it purportedly enjoins actions based "not on what those actions *are* but on what *effect* they may have," making it "impossible for the Postal Service to know in advance which actions are prohibited and which are not." Defs.

---

[4] Defendants concede that they had the opportunity to address the appropriate scope of relief but assert that they had "no opportunity to address *the specific injunctive relief* the Court ultimately entered." Defs. Mem. 4 (emphasis added). But Defendants cite no authority for the proposition that a litigant seeking the opportunity to object to a *particular aspect* of an injunction constitutes the "extraordinary circumstances" necessary for Rule 59(e) relief. *See Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001).

[5] Defendants argue only that the Court's order fails to comply with Rule 65(d)(1)'s specificity and reasonable detail requirements, *see* Fed. R. Civ. P. 65(d)(1)(B)-(C). The States therefore do not address compliance with Rule 65(d)(1)(A)'s requirement that the injunction "state the reasons why it was issued," which, in any event, the Court thoroughly addressed in its memorandum opinion.

7

Mem. 7-8. But the Court's order does not seek to retroactively enjoin conduct based on its service impact. Reasonably construed, the Ten-Percent Provision enjoins the *current and future* curtailment of late and extra trips if the condition set by the Court comes to pass, *i.e.*, if nationwide service scores decline more than ten percentage points for a period of at least two weeks. *New York*, 2022 WL 5241880, at *21. If and when service performance falls below this threshold, only then will the Postal Service be enjoined from continuing to curtail late and extra trips without first seeking an advisory opinion from the Postal Regulatory Commission pursuant to 39 U.S.C. § 3661(b). *Id.* The Court's injunction therefore provides fair notice to the Postal Service of the proscribed conduct, and does not invite "uncertainty and confusion." *Schmidt*, 414 U.S. at 476. This reading is also consistent with the Court's finding that a reduction in late and extra trips risks further degradation of mail service. Furthermore, the Court's order balances its restriction on reducing late and extra trips by giving the Postal Service operational flexibility to continue curtailing such trips if it seeks the Postal Regulatory Commission's input. Accordingly, the Court's order states its terms with specificity and describes in "reasonable detail" the "acts restrained," *i.e.*, the continued curtailment of late and extra trips following the specified reduction in service performance, without first seeking an advisory opinion.

      Because the Court's injunction complies with Rule 65(d)(1), modifying the order to remove the Ten-Percent Provision is neither necessary nor appropriate. As a threshold matter, even if the Court concludes that its order does not comply with Rule 65(d)(1), the appropriate remedy is clarification of its order, not modification. *See Jones v. United States Postal Serv.*, No. 20-CV-6516, 2020 WL 6554904, at *7 (S.D.N.Y. Sept. 29, 2020) (Postal Service seeking and obtaining clarification on preliminary injunction order that the court concluded did not

comply with Rule 65(d)(1)).[6] But in any event, Defendants' reasons for seeking a modification should be rejected. Defendants argue that the Ten-Percent Provision could cause the Postal Service to "unnecessarily" request advisory opinions from the Postal Regulatory Commission, "even if the Postal Service believed that such an opinion was not required." Defs. Mem. 8. But as this litigation has shown, the Postal Service cannot be left to monitor its own compliance with 39 U.S.C. § 3661(b); its failure to request an advisory opinion when legally required is the precise reason the States filed this action. What Defendants view as "overdeterrence," Defs. Mem. 8, is in fact "the mischief that the injunction seeks to prevent." *Common Cause v. Nuclear Regul. Comm'n*, 674 F.2d 921, 927 (D.C. Cir. 1982) (quoting *United States v. Christie Indus., Inc.*, 465 F.2d 1000, 1007 (3d Cir. 1972) and evaluating Rule 65(d)(1) compliance "in the light of the circumstances surrounding (the injunction's) entry"). That the Postal Service may be more likely to seek advisory opinions in the future under the injunction is not a basis to grant the extraordinary relief of modifying this Court's order.[7]

---

[6] Accordingly, to the extent the Court finds that its permanent injunction order does not comply with Rule 65(d)(1), the States request that the Court reject Defendants' requests for removal and modification, and simply clarify that its order operates prospectively to enjoin only the continued curtailment of late and extra trips *following* a ten percent reduction in service performance over a two-week window.

[7] The Postal Service does not only request an advisory opinion when it is certain one is required. The Postal Regulatory Commission has previously instructed the Postal Service to request an advisory opinion even when the need for one is not fully clear, so long as the question of 39 U.S.C. § 3661(b)'s applicability is "so difficult, doubtful, serious, or substantial as to make it a fair ground for litigation." *See Advisory Opinion Concerning a Proposed Change in the Nature of Postal Services*, Postal Rate Comm'n, Apr. 22, 1976, at 72 (N75-1), https://www.prc.gov/prcarchive/viewpdf.aspx?docid=508276839. Consistent with this instruction to essentially err on the side of caution when determining whether to request an advisory opinion, the Postal Service has requested advisory opinions for initiatives that raise the "possibility" of implicating section 3661(b). *See, e.g.*, *Request of the United States Postal Service for an Advisory Opinion on Changes in the Nature of Postal Services*, Postal Reg. Comm'n, July 27, 2011, at 2 n.4 (N2011-1), https://www.prc.gov/docs/74/74124/Request.FINAL.pdf (Postal Service "conced[ing] the

9

Defendants also suggest that a failure to modify the order will result in the Court micromanaging the Postal Service's operations. Defs. Mem. 8. But as the Court has stated, "requiring the [Postal Service] to comply with the statutory requirement that it obtain an advisory opinion from the [Postal Regulatory Commission] . . . is not micro-managing; it is requiring the [Postal Service] to act within its statutory authority." *New York*, 490 F. Supp. 3d at 243. Regardless, the Court's order, as currently written, affords the Postal Service substantial operational discretion, leaving completely intact its ability to implement four other sweeping nationwide operational initiatives, and as to late and extra trips, requiring only that the Postal Service seek an advisory opinion before curtailing such trips if and only if service falls below the specified performance threshold.

### III. The Court Should Not Amend its Order to Add an Intent or Knowledge Element, or a Causation Standard.

The Court should also decline Defendants' requests to add[8] an intent or knowledge element, and causation standard, to its order. Defs. Mem. 9-11, 12-14. Defendants argue that the Court should amend its order to impose an intent or knowledge requirement, because while the order enjoined the Postal Service from curtailing late and extra trips if service falls by more than 10 percentage points for a period of at least two weeks, "[i]t does not require that the Postal Service have intended that decline, or that the service impact was reasonably foreseeable." *Id.* at 11. Defendants' request for an intent or knowledge requirement

---

possibility" that section 3661(b) could apply to operational initiative, and submitting request for advisory opinion without waiver of argument that it is not legally required to do so).

[8] In certain instances, Defendants describe their requests regarding these elements as requests that the Court "confirm" or "clarify" its current order; in other instances, Defendants describe them as requests to "add" to or "amend" the Court's order. *Compare* Defs. Mem. 5, 10 *with id.* at 6, 14. Because Defendants have brought a Rule 59(e) motion to "alter or amend" the Court's judgment, the States refer to the requests as proposed amendments rather than clarifications.

Case 1:20-cv-02340-EGS   Document 110   Filed 11/14/22   Page 14 of 17

is unwarranted in light of the Court's findings in this case and the relief it has fashioned. As noted above, a commonsense reading of the injunction demonstrates that it does not prohibit conduct that is revealed after the fact to have impacted service. Rather, the Court's order enjoins the Postal Service from curtailing late and extra trips once a specified decrease in service performance occurs, without seeking an advisory opinion, a reading wholly consistent with the Court's conclusion that the Postal Service's efforts to reduce late and extra trips were the "primary factor" in reducing service performance, and that its failure to seek an advisory opinion before proceeding with such efforts violated section 3661(b). *New York*, 2022 WL 5241880, at *21. The injunction therefore already contemplates an intent or knowledge requirement, insofar as it prohibits Defendants from knowingly or intentionally reducing late and extra trips if service has fallen by the specified amount, without seeking an advisory opinion. Such an order does not warrant an explicit statement that the Postal Service must have "intended or reasonably known" that a reduction in trips would cause a reduction in service. Defs. Mem. 5. Contrary to Defendants' argument, the Court's injunction does not reflect a "strict liability" provision. *Id.* at 10.

      Moreover, the amendment proposed by Defendants—tying the injunction to the Postal Service's knowledge or intent to denigrate service—would add a condition to the injunction that could spur needless litigation and impose unnecessary hardship on the States. Under the modification Defendants propose, if the Postal Service continued to curtail late and extra trips despite the service reduction described in the Court's order without first seeking an advisory opinion, it could prompt litigation concerning what the Postal Service intended or knew. And without statements in the public record, the States would likely have no way of showing a violation of the injunction, precipitating a scenario of either noncompliance, or protracted

discovery into the Postal Service's decision-making. This would be impractical and make enforcement of the injunction burdensome on all parties.

Similarly, amending the order to require a causal relationship between late and extra trips and service scores is unnecessary. Defendants argue here, as they did in their motion for summary judgment, that complex factors make it difficult to determine whether a reduction in late and extra trips causes a decline in service performance. *See* Defs. Mem. 13; *see also* Defs. Mem. Supp. Mot. Summ. J., at 13, 25, ECF No. 66-1. But the Court squarely addressed and resolved this issue in deciding the parties' cross-motions for summary judgment, concluding that late and extra trips were the "primary factor in affecting service" when mail delays hit historic lows. *New York*, 2022 WL 5241880, at *21; *id.* at *6 ("Defendants themselves have stated that the initial drop in service scores . . . was connected to USPS's efforts to mitigate late and extra trips nationwide."); *id.* at 12 ("USPS has also acknowledged the connection between the decrease in service performance and its efforts to mitigate late and extra trips nationwide.").[9] Defendants' attempt to use a Rule 59(e) motion to raise issues already resolved by the Court is improper. *Leidos, Inc.*, 881 F.3d at 217 (a Rule 59(e) motion may not be used to "relitigate old matters"). Because the Court's injunctive relief was issued in the context of its memorandum opinion, which isolated a particular Postal Service initiative causing the mail slowdown, no modification to specify a causation standard is necessary.

### IV. The Court Should Not Alter the Requirement that the Postal Service Must Review Weekly Service Performance.

Finally, the Court should deny Defendants' request that it only be required to review

---

[9] The Court also issued its injunctive relief despite a similar argument the Postal Service made in its motion to clarify the preliminary injunction. *See* ECF No. 90-1 at 2 n.2 ("The Postal Service notes that the use of late and extra trips does not appear to have a correlational or causational relationship with improved service performance.").

quarterly, rather than weekly, service scores to assess mail performance in complying with the order.  Defs. Mem. 14-15.  The Postal Service asserts that it does not "ordinarily publish" weekly service performance data.  *Id.* at 14.  Notably, it does not claim that it does not collect such data in the ordinary course of its operations.[10]  The fact that the Postal Service prefers not to comply with this aspect of the Court's order because its current obligations only require it to publish quarterly data is not a basis under Rule 59(e) to modify the injunction.  Moreover, as discussed *supra*, Defendants' argument that evaluating service on a weekly basis could risk contempt liability for service "blips," *id.* at 15, misunderstands the nature of the Court's injunction, and should be rejected.

## CONCLUSION

For the foregoing reasons, the States respectfully request that the Court deny Defendants' motion to alter or amend the judgment.

Dated: November 14, 2022                  Respectfully submitted,

                                                   LETITIA JAMES
                                                   *Attorney General of the State of New York*

                                      By: */s/ Lindsay McKenzie*
                                                 Michael J. Myers, *Senior Counsel*
                                                 Lindsay McKenzie, *Assistant Attorney General*
                                                 Office of the New York State Attorney General
                                                 28 Liberty Street
                                                 New York, NY 10005
                                                 Phone: (212) 416-8714
                                                 lindsay.mckenzie@ag.ny.gov

                                                 *Attorneys for Plaintiffs in 20 Civ. 2340*

---

[10] Indeed, the Postal Service already collects and reports some weekly service data for multiple classes of mail pursuant to settlement agreements in other cases.  *See, e.g.*, Settlement Agreement, *NAACP v. USPS*, D.D.C. Civil Action No. 20-cv-2295, ECF No. 170, ¶ 5a (requiring the Postal Service to provide the plaintiffs weekly First-Class Mail and Marketing Mail service performance scores for the six weeks before and one week following the general election).

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>JOSEPH R. BIDEN, JR., *in his official capacity as President of the United States*, et al.,<br><br>    Defendants. | Case No. 20 Civ. 2340 |

**[PROPOSED] ORDER**

  Defendants' motion at ECF No. 108 to alter or amend the judgment at ECF No. 107 is DENIED.


Dated: _____       _____
                     Emmet G. Sullivan
                     United States District Judge